UNITED STATES, Appellee,

v.

Christopher T. HICKS, Airman First
Class, U.S. Air Force, Appellant.

No. 96–1212.
Crim.App. No. S29025.

U.S. Court of Appeals for
the Armed Forces.

Argued March 4, 1997.

Decided Sept. 12, 1997.

Certiorari Denied Jan. 12, 1998.
See 118 S.Ct. 700.

Sullivan, J., filed opinion concurring in result.

For Appellant: *Major Carol L. Hubbard* (argued); *Colonel David W. Madsen* (on brief); *Colonel Jay L. Cohen, Lieutenant Colonel Kim L. Sheffield,* and *Captain Todi S. Carnes.*

For Appellee: *Major LeEllen Coacher* (argued); *Colonel Theodore J. Fink* and *Lieutenant Colonel Michael J. Breslin* (on brief).

Amicus Curiae urging affirmance: *Major R.W. Koeneke,* USMC (argued); *Colonel Charles Wm. Dorman,* USMC, and *Commander D.H. Myers,* JAGC, USN.

*Opinion of the Court*

CRAWFORD, Judge:

Pursuant to his pleas, appellant was convicted at a special court-martial of failing to pay a just debt (5 specifications), in violation of Article 134, Uniform Code of Military

Justice, 10 USC § 934. The convening authority approved the sentence by the military judge of a bad-conduct discharge, confinement and forfeiture of $555 pay per month for 4 months, and reduction to the lowest enlisted grade. The Court of Criminal Appeals affirmed the findings and sentence in an unpublished opinion. We granted review of the following issues:

I

WHETHER TRIAL DEFENSE COUNSEL'S FAILURE TO EVALUATE AND ENSURE THAT DOCUMENTATION SUBMITTED "IN SUPPORT OF" APPELLANT'S REQUEST FOR CLEMENCY DID NOT DIRECTLY AND PREJUDICIALLY CONTRADICT APPELLANT'S PERSONAL PLEA FOR CLEMENCY CONSTITUTED INEFFECTIVE POST–TRIAL ASSISTANCE OF COUNSEL.

II

WHETHER THE CONVENING AUTHORITY'S ACTION SHOULD BE SET ASIDE WHERE THAT OFFICER PRESUMABLY ACTED ON THE ADVICE OF HIS STAFF JUDGE ADVOCATE THAT HE WAS "PERMITTED TO CONSIDER THE FACT THAT A1C HICKS WAS WILLING TO ACCEPT A SENTENCE MORE SEVERE THAN THAT ACTUALLY IMPOSED AT TRIAL WHEN DETERMINING THE APPROPRIATENESS OF HIS SENTENCE."

We hold that appellant's defense counsel did not directly or prejudicially contradict appellant's post-trial plea for clemency. We also hold that failure of the staff judge advocate (SJA) to put the pretrial agreement in proper context was harmless error.

FACTS

After trial, appellant provided defense counsel with a list of individuals who would assist in preparing a clemency package. Trial defense counsel contacted these individuals and they submitted letters on appellant's behalf. Some of the letters, however, were not so favorable as appellant's defense counsel desired.

One of the letters was submitted from Staff Sergeant (SSgt) Robert J. Fitzpatrick, a direct supervisor of appellant; it stated:

During the period A1C [Airman First Class] Hicks was assigned to me his duty performance was satisfactory. His dress and appearance were usually at standards or below. His level of job knowledge and proficiency were also satisfactory. Frankly, before these charges were invoked against him I would not have considered his performance competitive in the fast-paced, high standard, heavy responsibility, Crew Chief career field.

. . . . In fact, I would never recommend his retention in the Air Force. The fact is that his being in prison is hurting us out on the flightline. As long as A1C Hicks remains in prison our unit doesn't get a replacement for his position. This means that for the four months we let him sit in prison he serves a sentence for something HE did, yet at the same time WE out at the 12th pay the price also.

I request clemency not on behalf of A1C Hicks who was justly sentenced for something he did, but for the 12th Fighter Squadron Crew Chiefs who will unjustly suffer by another hit to [an] already low manning roster.

Trial defense counsel also collected a letter from SSgt John Thomas which stated:

All aspects of his duty performance were satisfactory. He would rate below most of his peers, although this may have been because of the pressures he felt knowing about his financial problems.

\*   \*   \*

I wouldn't recommend A1C Hicks' retention in the Air Force simply because he hasn't adapted to [the] Air Force very well. This doesn't mean he couldn't be extremely successful in the civilian sector. I would request clemency for A1C Hicks on the amount of time spent in prison and also the revocation of his bad-conduct discharge to allow for other employment opportunities.

At the close of his own letter requesting clemency, appellant opined that "if my peers and supervisors were consulted they would also support my returning to active duty status with my squadron." Appellant stated he did not remember seeing these unfavorable letters. As a result of these inconsistencies, the Government sought an affidavit from trial defense counsel, Captain (Capt) David C. Capt C stated that the two letters in question were discussed with appellant and that appellant agreed to their submission as part of the clemency package. Capt C also noted that it was his thought that the convening authority would be more inclined to grant relief if there was a viable picture of appellant.

In the addendum to the SJA's recommendation, the Acting SJA noted appellant had submitted a clemency package and the items were all listed as attachments. The Acting SJA then stated:

A1C Hicks asks that you grant him clemency by reducing the period of confinement adjudged by the court-martial and suspending his bad-conduct discharge. He asks that you return him to duty in his squadron, and opines "if my peers and supervisors were consulted they would also support my returning to active duty status."

A1C Hicks has included two letters from NCOs who worked with him in the 12th Fighter Squadron. They both describe his duty performance as satisfactory, but rate him below par compared against his contemporaries. Both NCOs state they would *not* recommend A1C Hicks be retained in the Air Force; however, one recommends suspension of the BCD and the other asks that A1C Hicks be released from confinement so that his manning slot can be filled early.

The defense submits this was error. The Government argues in turn that this was a plea to change the forfeitures or to seek a limitation on confinement.

The Acting SJA also advised the convening authority in the Addendum as follows:

Prior to trial, A1C Hicks entered into a pretrial agreement with your predecessor in command, [Brigadier General] William T. Hobbins. A1C Hicks offered to plead guilty to the five specifications of which he now stands convicted, in exchange for a limit on his sentence of a BCD, five months confinement, forfeiture of 2/3 pay per month for six months, and reduction to E-1. You are permitted to consider that A1C Hicks was willing to accept a sentence more severe than that actually imposed at trial when determining the appropriateness of his sentence.

The court below found that defense counsel, Capt C, was acting competently when he submitted the clemency package. He was seeking to appeal to the convening authority concerning mission readiness and to present a credible picture of appellant hoping that would be enough to secure remission of the remaining confinement or suspension of the discharge. It stated, "The fact that a tactic fails to achieve its intended objective does not reflect on the competence of the attorney who attempts it." Unpub. op. at 4.

The court below noted, as to Issue II, that the Acting SJA did not say that the pretrial agreement was clemency but, rather, merely advised that the limitation on the sentence was a factor the convening authority could consider. Unpub. op. at 3.

## DISCUSSION

Regardless of indigence, the military accused has the right to the effective assistance of counsel during the pretrial, trial, and post-trial stages. *United States v. Carter,* 40 MJ 102, 105 (CMA 1994); *United States v. Fluellen,* 40 MJ 96, 98 (CMA 1994). This right is guaranteed by the Sixth Amendment and Article 27, UCMJ, 10 USC § 827. Additionally, as we stated in *United States v. MacCulloch,* 40 MJ 236, 239 (1994):

Pursuant to ABA Model Rules of Professional Conduct 1.3 (1983), which has been adopted by the ... [Air Force, *see* TJAG Policy Letter 26: Rules of Professional Conduct (22 Oct 92) ], defendants are entitled to be zealously represented by their attorneys.

As to the effectiveness of counsel, we apply a two-pronged test, the first being the com-

petence prong, and the second being the prejudice prong. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984); *United States v. Scott*, 24 MJ 186 (CMA 1987). The *Strickland* Court emphasized that "[j]udicial scrutiny of counsel's performance must be highly deferential." 466 U.S. at 689, 104 S.Ct. at 2065. Normally, strategic or tactical decisions do not lead to a showing of a lack of competence. *Id.* at 690–91, 104 S.Ct. at 2065–67.

Just as counsel should consult with and keep the client informed as to what is being done on the client's behalf during the pretrial and trial stages, so too should counsel engage in informative discussions with the client during the post-trial stage. During this stage, counsel can petition for deferment of confinement, request clemency, provide written materials which may affect the convening authority's decision, respond to the SJA's recommendation, refer to matters outside the record of which the convening authority would not be aware, and attack matters in the record of trial. Any of these actions may be done to zealously represent the accused.

On the other hand, defense counsel makes the tactical and strategic decisions on what to submit to the convening authority. *MacCulloch*, 40 MJ at 239. Such decisions on these submissions to the convening authority should be made after consultation with the accused. Appellant's defense counsel agreed during oral argument in this Court that, while there is no general requirement to show the letters to the accused, that should be done. Just as the accused controls the right to testify at trial, Standard 4–5.2(a), *ABA Standards for Criminal Justice, The Defense Function* (3d ed.1993), the accused also has the right to submit or not submit material to the convening authority over defense counsel's objection. *United States v. Lewis*, 42 MJ 1 (1995). But issues similar to those in this case generally or usually will be avoided where there is consultation between counsel and the accused.

■ We conclude that Capt C made a valid tactical decision to use the two letters to support appellant's plea for minimal confinement. Defense counsel was faced with the challenge of putting the best face on a weak case.

■ However, defense counsel was deficient on two counts: (1) he failed to adequately explain the letters to his client; and (2) he failed to inform the convening authority that SSgt Thomas recommended that appellant receive an administrative discharge instead of a bad-conduct discharge. Nevertheless, the thrust of appellant's clemency petition—though somewhat unclear—was to minimize confinement, not to obtain remission of the bad-conduct discharge. The convening authority had already referred the case to a special court-martial and had entered into a pretrial agreement providing for a bad-conduct discharge. Thus, there was no reasonable likelihood, in the absence of strong mitigating evidence, that he would suspend or remit the discharge. Defense counsel should have served as more than a robot or a clearing house, and should have discussed with appellant the two letters, as well as their pros and cons. For instance, had appellant objected to using them, appellant's clemency plea would have been without supporting statements and, thus, even weaker than it was with the somewhat derogatory statements. Additionally, Capt C should have urged the convening authority, who was a fighter pilot, to consider that clemency would assist the servicemembers on the maintenance line by giving them additional help. Defense counsel's failure to explain that SSgt Thomas wanted appellant to have an administrative discharge in lieu of a punitive discharge, and his failure to make a more direct appeal to the convening authority as a fighter pilot, does not reflect well on the competence of defense counsel under *Strickland*. Nonetheless, we hold that defense counsel's conduct did not substantially prejudice appellant. *Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064.

■ As to Issue II, the Acting SJA commented in response to the clemency package that appellant "was willing to accept a sentence more severe than that actually imposed at trial," referring to the pretrial agreement. These comments were not error. The Acting SJA did nothing more than inform the convening authority of the terms of the pretrial agreement and advise him that he could con-

sider the pretrial agreement as a factor in deciding whether to approve the adjudged sentence, which was less than that provided for in the pretrial agreement. Unlike the situation in *United States v. Kinman*, 25 MJ 99 (CMA 1987), the Acting SJA did not suggest that appellant agreed the sentence was appropriate; she only said that appellant agreed to accept it.

The statement by the Acting SJA might be viewed as "new matter" in the Addendum. There is no indication in the record that the Addendum was served on the defense, but that issue is not before us. Had the Addendum been served as legally required, Issue II would not be before us.

The decision of the United States Air Force Court of Criminal Appeals is affirmed.

Chief Judge COX and Judges GIERKE and EFFRON concur.

SULLIVAN, Judge (concurring in the result):

I see no unreasonable attorney performance in this case and disagree with the majority's suggestion that defense counsel's performance violated the competence prong of *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). *See United States v. MacCulloch*, 40 MJ 236, 240 (CMA 1994) (Sullivan, J., dissenting). As for Issue II, I would note that this is not a case where evidence of pretrial negotiations was introduced at a court-martial. *See* Mil.R.Evid. 410, Manual for Courts–Martial, United States, 1984, and *United States v. Barunas*, 23 MJ 71, 76 (CMA 1986).