UNITED STATES, Appellee,

v.

Douglas E. HOOD, Jr., Private
U.S. Army, Appellant.

No. 96–0548.
Crim.App. No. 9500624.

U.S. Court of Appeals for
the Armed Forces.

Argued March 4, 1997.

Decided Sept. 12, 1997.

Sullivan, J., filed opinion concurring in
the result.

For Appellant: *Captain Norman R. Zamboni* (argued); *Colonel John T. Phelps, II* and *Lieutenant Colonel Michael L. Walters* (on brief); *Lieutenant Colonel John T. Rucker* and *Captain Michael E. Hatch.*

For Appellee: *Captain Robert F. Resnick* (argued); *Colonel John M. Smith, Lieutenant Colonel Eva M. Novak,* and *Captain Joanne P. Tetreault* (on brief).

## Opinion of the Court

GIERKE, Judge:

A military judge sitting as a general court-martial convicted appellant, in accordance with his pleas, of one specification of larceny and two specifications of false swearing, in violation of Articles 121 and 134, Uniform Code of Military Justice, 10 USC §§ 921 and 934, respectively. The adjudged and approved sentence provides for a bad-conduct discharge, confinement for 18 months, and total forfeitures. The Court of Criminal Appeals affirmed the findings and sentence in an unpublished opinion.

Our Court granted review of the following issue:

> WHETHER THE DEFENSE COUNSEL, SPECIALLY DETAILED TO ASSIST PVT [PRIVATE] HOOD [TO] PREPARE HIS POST–TRIAL SUBMISSIONS, RENDERED INEFFECTIVE ASSISTANCE OF COUNSEL BY NEVER CONTACTING PVT HOOD AFTER THE COURT–MARTIAL, BY NEVER INFORMING PVT HOOD THAT HIS CLEMENCY MATTERS WERE DUE TO BE SUBMITTED TO THE CONVENING AUTHORITY, AND BY *SUA SPONTE* SUBMITTING MATTERS TO THE CONVENING AUTHORITY WHICH UNDERCUT PVT HOOD'S CHANCES OF RECEIVING CLEMENCY.

We hold that defense counsel's performance was deficient because he failed to consult with his client concerning a clemency petition, but that appellant was not prejudiced by the deficiency.

At the beginning of appellant's court-martial on March 23, 1995, his detailed defense counsel, Captain (CPT) Hollers, informed the military judge that he would be leaving the Army on May 1, 1995. Major (MAJ) M, the Senior Defense Counsel, was seated at the counsel table and announced to the military judge that he had detailed himself to represent appellant after the trial. The military judge asked appellant, "Have you talked to him? Do you at least know who he is?" Appellant responded, "Yes, sir." The military judge then asked appellant, "Do you agree to have him as your post-trial attorney?" Appellant responded, "Yes, sir, I do." MAJ M was then excused from participation in the court-martial, left the counsel table, and withdrew to the spectator area.

At the end of the court-martial, after the sentence was announced, the military judge asked appellant, "[D]o you remember having MAJ [M] in here?" Appellant responded, "Yes, I do, sir." The military judge then asked, "He's the one you want—who has been detailed to assist you in the post-trial process; is that right?" Appellant responded, "Yes, sir."

MAJ M was served with the record of trial and the staff judge advocate's post-trial recommendation. On behalf of appellant, he submitted a clemency request based on appellant's problem-filled family background, his mother's deteriorating health, and her need for appellant's support and care. In support of the clemency request, MAJ M attached three letters from appellant's mother, letters from several doctors describing appellant's mother's poor health, and a three-page "rough draft" of appellant's unsworn statement that appellant had presented at the court-martial.

The first of the three letters from appellant's mother, dated April 4, 1995, begins by thanking CPT Hollers, the two noncommissioned officers who escorted appellant to the trial, and two other noncommissioned officers "for their professionalism, courtesy and respect shown [her] during those proceedings." She then complained of the "rudeness and lack of respect" shown by two captains, a first sergeant, a sergeant, and a "chief." Appellant's mother complained that they snickered, laughed, and made snide remarks in her presence during the trial and photographed her son while he was handcuffed. She asked that they be reprimanded and required to apologize. She concluded her

letter by writing, "I was also upset so much more by their misconduct, than the actual proceedings, that I forgot to thank the judge."

In her letter of April 13, 1995, appellant's mother referred to the "horror" in appellant's personal life and "how confused he was about everything mentally shoved down inside all his life." She also informed the convening authority that she was "totally and permanently disabled" and had incurred $50,000 in medical bills that were not covered by insurance.

In her letter of April 16, 1995, appellant's mother transmitted the "rough draft" of appellant's unsworn statement at trial. She described appellant as "a responsible, caring, contributing young man capable of many things." She said that "[w]ith proper therapy, [appellant] can learn to dig all those things out and deal with them ... and heal." She concluded by saying that appellant "is worthy of consideration for mercy. And I so desperately need him home."

■ In two affidavits submitted to the court below, appellant asserts that MAJ M did not discuss the clemency package with him before submitting it. Appellant also asserts that he did not want the April 4, 1995, letter from his mother submitted to the convening authority because it "was extremely negative in nature," because she "expressed her belief that [his] court proceeding was unfair, and that the trial counsel and other government representatives were rude and unprofessional." Regarding the "rough draft" of the unsworn statement, appellant does not complain about its content, but only its appearance. He asserts that it was unsigned, improperly formatted, contained bad grammar, and "looks like it was written by a fourth grader." Appellant also asserts that he had clemency matters he would have submitted, but that he was denied an opportunity to do so.

■ Unlike the defense counsel in *United States v. Miller*, 45 MJ 149 (1996), MAJ M established an attorney-client relationship with appellant, as required by RCM 1106(f)(2), Manual for Courts-martial, United States (1995 ed.). MAJ M's appearance in court, the military judge's questioning of appellant, and appellant's affirmative agreement to accept MAJ M as substitute counsel were sufficient to comply with RCM 1106(f)(2).

Because appellant's two post-trial affidavits are unrebutted, we accept as true appellant's assertion that MAJ M did not discuss the contents of the clemency package with him. We hold that MAJ M's failure to consult with appellant and submission of clemency materials to which appellant objected was deficient performance within the meaning of *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984).

■ Defense counsel has primary responsibility for strategic and tactical decisions, "after consultation with the client where feasible and appropriate." *United States v. MacCulloch*, 40 MJ 236, 239 (CMA 1994), quoting Standard 4–5.2(b), *ABA Standards for Criminal Justice, The Defense Function* (3d ed.1993). When preparing a post-trial clemency package, defense counsel is "required to make an evaluative judgment on what items ... [are] to be submitted to the convening authority." *United States v. MacCulloch*, *supra*. If defense counsel thinks that certain matters should not be submitted, he should so advise his client. *Id.* Defense counsel may not, however, refuse to submit matters offered by the client or submit matters over the client's objection. *See United States v. Hicks*, 47 MJ 90, 93 ("Just as the accused controls the right to testify at trial, ... the accused also has the right to submit or not submit material to the convening authority over defense counsel's objection."); *United States v. Lewis*, 42 MJ 1, 4 (1995) ("Counsel's duty is to advise, but the final decision as to what, if anything, to submit rests with the accused.").

To prevail on his claim of ineffective assistance of counsel, appellant must show that his counsel's deficient performance prejudiced his case. To satisfy this burden, he "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694, 104 S.Ct. at 2067.

We hold that appellant has not carried his burden of showing prejudice. Although appellant characterizes his mother's April 4 letter as "extremely negative," it was a mix of positive and negative comments. Appellant's mother expressed regret at neglecting to thank the judge. She praised appellant's defense counsel and appellant's guards. While she complained of rude and inappropriate behavior by some military members, we conclude that her complaints could not have prejudiced appellant when considered in the context of her entire letter. We hold that appellant has not shown a "reasonable probability" of more favorable action by the convening authority if the letter had not been submitted.

With respect to the "rough draft" of appellant's statement, we agree with appellant that the appearance of the document could have been improved. Appellant has not shown, however, a "reasonable probability" that the convening authority would have granted clemency but for the quality of appellant's typing and grammar.

With respect to appellant's assertion that he had additional clemency materials to submit, we hold that he has not met his burden of showing prejudice because he has not identified any matters that he would have submitted. *See United States v. Moseley*, 35 MJ 481, 486 (CMA 1992) (Gierke, J., concurring in part and dissenting in part) (appellant must proffer what he would have submitted).

The decision of the United States Army Court of Criminal Appeals is affirmed.

Chief Judge COX and Judges CRAWFORD and EFFRON concur.

SULLIVAN, Judge (concurring in the result):

The majority is hard-pressed to distinguish this case from *United States v. MacCulloch*, 40 MJ 236 (CMA 1994). I dissented in that case, and my affirmance in appellant's case is consistent with that vote. *Id.* at 240-41 (Sullivan, J., dissenting). I am not sure that the majority can say the same.