HAM, Judge,
concurring in the result:
I agree we must return this case for a new post-trial recommendation and action. I conclude we must do so, however, because trial defense counsel provided ineffective assistance during the post-trial process.
Allegations of ineffective assistance are examined under the well-known standard established in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Appellant bears the burden of showing first, that his counsel’s performance was deficient, and second, that his counsel’s deficient performance prejudiced him. Id. at 687, 104 S.Ct. 2052. To prove deficient performance, “Appellant must show ‘a reasonable probability that, but for counsel’s unpro *507 fessional errors, the result of the proceeding would have been different.’ ” United States v. Lee, 52 M.J. 51, 53 (C.A.A.F.1999) (quoting United States v. Wiley, 47 M.J. 158, 159 (C.A.A.F.1997)). In the context of an allegation of ineffective assistance during the post-trial phase, because of the highly discretionary nature of the convening authority’s clemency power, appellant meets this burden if he makes “some colorable showing of possible prejudice.” Lee, 52 M.J. at 53 (citing United States v. Wheelus, 49 M.J. 283, 289 (C.A.A.F.1998)). See also United States v. Rosenthal, 62 M.J. 261, 263 (C.A.A.F.2005). While an appellant does not make a colorable showing of possible prejudice by “sheer speculation,” United States v. Brown, 54 M.J. 289, 293 (C.A.A.F.2000), an appellant does meet his burden where he demonstrates that his actions, in response to proper advice from his defense counsel, “could have produced a different result.” United States v. Frederickson, 63 M.J. 55, 57 (C.A.A.F.2006) (citation omitted). Effective assistance of counsel is especially important during the post-trial phase because it is the accused’s “best hope for relief.” United States v. Howard, 47 M.J. 104, 106 (C.A.A.F.1997).
Appellant alleges, and trial defense counsel does not meaningfully dispute, that he was not advised of the right to request waiver of automatie forfeitures in accordance with Article 58b(b), UCMJ. The failure to do so more than a dozen years after the effective date of Article 58b because it is not part of a facially deficient stock “post-trial and appellate rights form” fell below any objective standard of reasonableness, and constitutes deficient performance.[1] The lack of meaningful dispute over whether defense counsel actually provided the advice at issue also serves to distinguish this case from United States v. Key, where the appellant merely could not recall his defense counsel advising him of his right to submit a request for waiver of forfeitures. 57 M.J. 246, 249 (C.A.A.F.2002) (holding that appellant’s assertion was “too equivocal and ambiguous to overcome the presumption that his counsel were competent,” and fell short of the standard for compelling defense counsel to justify their actions).
In addition, under the facts of this case as set forth in the majority opinion, appellant has met his burden of demonstrating a “col-orable showing of possible prejudice.” Therefore, I also conclude that defense counsel’s deficient performance prejudiced appellant.[2]
Defense counsel’s inexcusable failure to advise appellant of his right to request waiver *508 of automatic forfeitures is somewhat complicated by appellant’s adjudged forfeiture of $500.00 pay per month for six months.[3] Nonetheless, waiver of automatic forfeitures beginning as early as their effective date (in this ease, fourteen days after sentence was adjudged on February 25, 2009) and continuing for six months or until appellant’s release from confinement or parole, whichever occurred first, was still an option to assist appellant’s unemployed wife and children. See Emminizer, 56 M.J. at 445 (stating, “if partial forfeitures take effect under Article 57(a), the waiver authority applies only to any mandatory forfeitures required under Article 58b”). Appellant, in his unsworn statement, and trial defense counsel, in both her sentencing argument and post-trial submission, discussed or referenced his family obligations.
Moreover, defense counsel’s failure here is exacerbated by her request in her post-trial submission that the convening authority grant as clemency “ [disapproval of the adjudged forfeitures.” Even if granted, absent a request for and approval of some form of clemency concerning the automatic forfeitures, neither appellant nor his dependents would receive a dime during his period of confinement or parole because, by operation of law, appellant forfeited all of his pay and allowances due during that period. UCMJ art. 58b(a)(l).[4] This demonstrates to me the strong possibility that, apart from improperly failing to advise appellant of his options with regard to waiver of automatic forfeitures, trial defense counsel either did not understand them or, worse, was not aware of them.[5]
Both the majority and the separate concurring opinions reflect this court’s en banc unmistakable frustration and disappointment at both the performance of counsel in this case and the number of allegations of post- *509 trial ineffective assistance of counsel appellants are lodging before this court that result in new post-trial recommendations and actions. Defense counsel should harbor no illusions otherwise. Nearly twenty years ago, this court felt
compelled to comment further on the responsibility of defense counsel to adequately represent their clients in post-trial matters. Former Chief Judge Everett ... has observed that the right to counsel under the UCMJ is broader than that provided by the Sixth Amendment perhaps because “Congress may have concluded that servieemembers, who risk their lives for their country, should be granted a right to counsel greater than that which would be minimally required by the Constitution.” United States v. Johnson, 21 M.J. 211, 213 (C.M.A.1986). To meet this obligation in the post-trial phase, trial defense counsel ... must do more than write half-hearted post-trial submissions just to meet an obligation of the Rules for Courts-Martial. We expect all defense counsel to perform the post-trial representation function in a professional manner.
United States v. Carmack, 37 M.J. 765, 769 (A.C.M.R.1993). Simply stated, this ease should serve as military defense counsel’s “wake up call” for zealous, competent post-trial representation, a call this court should not have had to make once again for this generation of military justice practitioners.
A trial defense counsel’s responsibilities do not cease at the end of trial. R.C.M. 1105 and 1106. A trial defense counsel has the responsibility to review a ease after trial and to bring forth all legal issues and clemency matters which may assist his client. United States v. Garner, 34 M.J. 575, 577 (A.C.M.R.1992) (quoting United States v. Harris, 30 M.J. 580, 582 (A.C.M.R.1990)). “The law makes no exception for wartime conditions.” United State v. Hawkins, 34 M.J. 991, 995, n. 6 (A.C.M.R.1992). It is incomprehensible to me that we should once again have to “reinvent the wheel” in this area. See United States v. Palenius, 2 M.J. 86, 93 (C.M.A.1977) (discussing post-trial responsibilities of defense counsel). Scores of cases from this court and our predecessor, the Army Court of Military Review, and our superior court and its predecessor, the Court of Military Appeals, have set forth how defense counsel should zealously and competently perform their post-trial duties, many of them, unfortunately, responding to allegations that trial defense counsel were ineffective in those duties.
While trial defense counsel perform “myriad duties” post-trial for their clients, id., one can glean from the existing case law that there are five main components to effectively carry out counsel’s post-trial duties. First, at issue in this case, defense counsel must fully and accurately advise their soldier-clients of their post-trial and appellant rights, including those rights concerning deferral and waiver of forfeitures as applied to both adjudged and automatic forfeitures, and then defense counsel must execute their client’s decisions concerning those rights. See Palenius, 2 M.J. at 93. See also R.C.M. 502(d)(6) discussion (E).
Second, defense counsel must maintain an ongoing attorney-client relationship during the post-trial period, including regular communication with their soldier-clients. Palenius, 2 M.J. at 93. See also United States v. Hicks, 47 M.J. 90, 93 (C.A.A.F.1997) (“Just as counsel should consult with and keep the client informed as to what is being done on the client’s behalf during the pretrial and trial stages, so too should counsel engage in informative discussions with the client during the post-trial stage”); United States v. Clemente, 51 M.J. 547, 551 (Army Ct.Crim.App.1999) (“[Tjrial defense counsel must consult with the client regarding clemency and other matters, and must comply with the client’s desires regarding submissions to the convening authority”). In the normal course of events,
[ojnee a trial defense counsel is detailed to represent an accused soldier and an attorney-client relationship is established, absent an express release by the accused or good cause shown on the record, that trial defense counsel remains as counsel for the accused from preferral of charges, through action by the convening authority, and until appointment of appellate defense counsel.
*510 United States v. Starks, 36 M.J. 1160, 1164 (A.C.M.R.1993) (citations omitted). See also United States v. Iverson, 5 M.J. 440, 442-43 (C.M.A.1978) (“Absent a truly extraordinary circumstance rendering virtually impossible the continuation of the [attorney-client] relationship, only the accused may terminate the existing affiliation with his trial defense counsel prior to the case reaching the appellate level”) Good cause is not established by administrative convenience, nor does it include “reassignment of defense counsel, even to a distant location.” Hawkins, 34 M.J. at 994 (citing Iverson, 5 M.J. at 442). See also R.C.M. 505(d)(2)(B) and 505(f). Unlike the Coast Guard Court of Criminal Appeals, we have never held that deployment of either the soldier or his attorney establishes good cause, and, in fact, defense counsel routinely remain on eases despite deployment or redeployment of either the counsel or the represented soldier. See United States v. Garcia, 68 M.J. 561, 565 (C.G.Ct.Crim.App.2009). As the Army’s current practice forcefully demonstrates, deployment is not a “truly extraordinary circumstance rendering virtually impossible the continuation of the [attorney-client] relationship.” Iverson, 5 M.J. at 442-43.
However, if good cause exists, substitute counsel may be appointed for purposes of post-trial representation, and the attorney-client relationship with the original trial defense counsel may be terminated. See Iverson, 5 M.J. at 442. Good cause includes “separation of the trial defense counsel from the service prior to completion of the convening authority’s action.” Hawkins, 34 M.J. at 994 (citing United States v. Zarate, 5 M.J. 219 (C.M.A.1978) (summary disposition)); United States v. Davis, 5 M.J. 451 (C.M.A.1978). Good cause also exists where the soldier alleges his defense counsel provided ineffective assistance at trial, so long as counsel is aware of the allegation. See United States v. Carter, 40 M.J. 102 (C.M.A.1994). In any event, if substitute counsel is appointed counsel must both establish and maintain an attorney-client relationship throughout the post-trial period. See, e.g., Howard, 47 M.J. 104 (substitute counsel failed to establish attorney-client relationship before responding to SJA recommendation); United States v. Miller, 45 M.J. 149 (1996) (substitute defense counsel failed to contact client and establish attorney-client relationship before filing response to SJA recommendation).
Regardless of whether the post-trial attorney-client relationship is continuing or newly established, it does not end until “appellate counsel have been properly designated and have commenced the performance of their duties, thus rendering further representation by the original trial defense attorney or those properly substituted in his place unnecessary.” Palenius, 2 M.J. at 93. This is to ensure “the uninterrupted representation of the accused.” Id.
Third, defense counsel must review the staff judge advocate’s recommendation, and prepare his response to it. Palenius, 2 M.J. at 93. While counsel must consult with the soldier-client when determining whom to contact for potential clemency submissions, it is the attorney’s responsibility to gather and prepare the post-trial submission, not the client’s. Garner, 34 M.J. at 577 (quoting Harris, 30 M.J. at 582).[6] In fact, counsel risks deficient performance if he fails to contact those persons the soldier-client identifies for clemency submissions, United States v. Brewer, 51 M.J. 542, 546 (Army Ct.Crim.App.1999), or if counsel “improperly shift[s] his responsibility” to identify and gather appropriate materials to his client. Harris, 30 M.J. at 582 (finding counsel provided ineffective assistance post-trial when he relied on appellant and his wife to gather materials for submission). Once prepared, the attorney must discuss the contents of the clemency package with the client — the failure to do so is deficient performance. United States v. Hood, 47 M.J. 95, 98 (C.A.A.F.1997); Brewer, 51 M.J. at 546. See also United States v. Martinez, 31 M.J. 524, 526 (A.C.M.R.1990) (finding counsel ineffective where he sent draft clemency petition to appellant but never followed up to ensure appellant received it). Finally and critically in this area, coun *511 sel must qualitatively advise their soldier-clients what submissions — by the soldier and others — are most likely to result in the convening authority granting clemency. United States v. Gilley, 56 M.J. 113, 124 (C.A.A.F.2001) (“Counsel has the responsibility to ‘make an evaluative judgment’ on what items to submit to the convening authority, and to so advise the client.”) (quoting and citing United States v. MacCulloch, 40 M.J. 236, 239 (C.M.A.1994)). “If defense counsel thought some matters should not be submitted, he should have so advised appellant.” MacCulloch, 40 M.J. at 239.
Fourth, despite the duty to qualitatively advise the soldier-client, once defense counsel provides that advice, the defense counsel is bound to submit those matters the client elects to submit. “[CJounsel do not have the authority unilaterally to refuse to submit matters which the client desires to submit.” United States v. Lewis, 42 M.J. 1, 4 (C.A.A.F.1995) (“Counsel’s duty is to advise, but the final decision as to what, if anything to submit rests with the accused.”). See also Clemente, 51 M.J. at 551 (“Hence, a defense counsel should neither submit matters over his client’s objection, nor fail to present matters that the client desires the convening authority to consider”). Accord Hood, 47 M.J. at 97 (While “defense counsel has primary responsibility for strategic and tactical decisions ... [djefense counsel may not ... refuse to submit matters offered by the client or submit matters over the client’s objection.”); Hicks, 47 M.J. at 93 (“Just as the accused controls the right to testify at trial ... the accused also has the right to submit or not submit material to the convening authority over defense counsel’s objection.”)
Fifth and finally, overlaying the first four basic tenets, appellate defense counsel must, in consultation with the soldier-client, develop a strategy for the post-trial phase, and devise tactics designed to successfully implement that strategy and attempt to achieve its goals. See Hood, 47 M.J. at 97. In this ease, the strategy leaping from the pages of the record was for defense counsel and appellant to seek to ameliorate the financial impact of appellant’s conviction and sentence on his dependent wife and children, including a request to waive automatic forfeitures for their benefit. Because appellant was never even advised of his right to request waiver of those forfeitures that take effect by operation of law, his defense counsel rendered deficient performance. Because appellant would have submitted such a request if correctly advised, he has “show[n] what he would do to resolve the error if given the opportunity.” Wheelus, 49 M.J. at 288. The record before us provides ample evidence of what appellant “would or could have submitted to support his waiver request .... [vjague or general intimations’ about the ‘particular nature of the materials’ that would or could have been submitted are insufficient to show prejudice.” Key, 57 M.J. at 249 (citing and quoting United States v. Pierce, 40 M.J. 149, 151 (C.M.A.1994)). Moreover, while by no means a certainty, appellant’s request to waive automatic forfeitures “could have produced a different result.” Frederickson, 63 M.J. at 57 (quoting Brown, 54 M.J. at 293). Accordingly, appellant has made “some colorable showing of possible prejudice,” Wheelus, 49 M.J. at 289, and he is entitled to the relief the majority grants him. See Paz-Medina, 56 M.J. at 504 n. 10 (convening authority can retroactively waive automatic forfeitures for the benefit of appellant’s family) (citation omitted).
For these reasons, I concur in the result.

. The post-trial and appellate rights form trial defense counsel used in this case is wrong in more areas than its patently deficient failure to discuss waiver of automatic forfeitures. In fact, although appellant was tried by general court-martial, the form appears to address post-trial rights applicable only to trial by special court-martial. Contrary to the majority opinion, this makes the deficiency here clearly a personal, rather than an institutional failing, even in the absence of correct advice on the form itself. Simply stated: not only is the form wrong — it is the wrong form. For example, the form misstates appellant’s right to have his case heard by this court, stating that he is only entitled to our review "if the convening authority approves a bad-conduct discharge.” Of course, this court's jurisdiction extends, inter alia, to cases in which the approved sentence includes either a punitive discharge “or confinement for one year or more.” UCMJ art. 66(b)(1). Second, the paragraph of the form that partially discusses forfeitures states that "by operation of Article 58(b) [sic],” a sentence of appropriate severity "will result in two-thirds forfeiture of pay.” Again, appellant faced trial by general court-martial, and faced forfeiture of all pay and allowances if he received either a punitive discharge or confinement for greater than six months, both of which, of course, he did receive. UCMJ art. 58b(a)(l) ("The pay and allowances [automatically] forfeited, in the case of a general court-martial, shall be all pay and allowances due that member during such period and, in the case of a special court-martial, shall be two-thirds of all pay due that member during such period.”) These are fundamental concepts, and the mistakes here are flagrant. One must ask, when the military judge inquired of appellant if his defense counsel had explained his post-trial and appellate rights to him and whether he understood those rights, to what rights was the military judge referring? As his trial defense counsel recalls “sticking vety close to that form” it is apparent that appellant was not properly or competently advised of his post-trial and appellate rights.

. The court in Key seems to require a higher threshold for appellant to carry the burden of proving prejudice due to deficient performance of counsel post-trial. 57 M.J. at 249. In Key, appellant did not establish prejudice where "there was no reasonable likelihood that the convening authority would have granted a request to waive forfeitures” under the facts of the case, particularly in the absence of an "offer of proof *508 regarding what [appellant] would or could have submitted to support his waiver request.” Id. However, since the holding in Key was that the appellant did not overcome the presumption of defense counsel competence, the court's discussion of prejudice is dicta. In any event, the court continued to follow the Lee/Wheelus analysis in cases decided after Key. See Rosenthal, 62 M.J. at 263.

.In general, a better overall defense strategy focused on monetary assistance to dependents is to request deferral of adjudged and automatic forfeitures from their effective date until action, disapproval of adjudged forfeitures at action, and waiver of automatic forfeitures for six months from action or until appellant’s release from confinement or parole, whichever occurs first, with direction that such waived forfeitures go to appellant’s dependents. See UCMJ arts. 57(a)(2), 10 U.S.C. § 857(a)(2) (deferral of adjudged forfeitures), 58b(a)(l) (deferral of automatic forfeitures), and 58b(b)(waiver of automatic forfeitures), 60(c)(2) (disapproval of sentence in whole or in part). See United States v. Emminizer, 56 M.J. 441 (C.A.A.F.2002); United States v. Moralez, 65 M.J. 665 (Army Ct.Crim.App.2007). The dispute in this case, however, centers only on the failure to advise of the right to request waiver of automatic forfeitures, which the convening authority could order paid to appellant’s dependents for a period of up to six months beginning at any point from the date the mandatory forfeitures look effect until six months from action or appellant’s release from confinement or parole, whichever occurred first.

. Appellant spent 183 days in pretrial confinement. He was tried and began his period of post-trial confinement on February 25, 2009, and his adjudged and automatic forfeitures took effect fourteen days later. The convening authority took action in appellant’s case on April 2, 2009. Finally, documents in the record of trial indicate appellant began a period of excess leave on June 18, 2009, during which he was not entitled to receive pay and allowances. United States v. Paz-Medina, 56 M.J. 501, 503 n. 6 (Army Ct.Crim.App.2001) (citations omitted). "When a servicemember is not entitled to compensation covered by the mandatory forfeiture provisions of Article 58b, [UCMJ], there is nothing to waive.” Emminizer, 56 M.J. at 444. See also Moralez, 65 M.J. at 667 (finding that even if the staff judge advocate rendered incomplete advice to the convening authority concerning forfeitures, because appellant, in all likelihood, was released from confinement by the time of action, appellant would not have been entitled to forfeiture relief as there was no longer any pay to forfeit).

. The Supreme Court recently found deficient performance where a defense counsel failed to advise a client concerning the immigration consequences of a federal conviction — matters that might have intuitively seemed beyond a criminal attorney's knowledge and expertise. See Padilla v. Kentucky, - U.S. -, 130 S.Ct. 1473, 176 L.Ed.2d 284 (2010). There is simply no excuse for a military defense counsel to be unversed in the area of automatic and adjudged forfeitures, matters falling directly in their area of practice.

. In this regard, I specifically disagree with any suggestion in the majority opinion to the contrary.