CORRECTED COPY

# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
MULLIGAN, FEBBO, and WOLFE
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**Specialist JORDAN M. PETERS**
**United States Army, Appellant**

ARMY 20110057

Headquarters, Fort Carson
Lanny J. Acosta, Jr., Military Judge
Colonel Gregg A. Engler, Staff Judge Advocate

For Appellant: Colonel Mary J. Bradley, JA; Major Christopher D. Coleman, JA; Captain Payum Doroodian, JA (on brief); Lieutenant Colonel Christopher D. Carrier, JA; Major Andres Vazquez, Jr., JA; Captain Joshua B. Fix, JA (on reply brief).

For Appellee: Colonel Mark H. Sydenham, JA; Lieutenant Colonel A.G. Courie III, JA; Major Melissa Dasgupta Smith, JA; Captain Christopher A. Clausen, JA (on brief).

28 February 2017

---------------------------------------------------
MEMORANDUM OPINION ON REMAND
---------------------------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

FEBBO, Judge:

On 12 February 2010, appellant went out drinking with other soldiers in Colorado Springs, Colorado. In the early morning of 13 February 2010, appellant drove his vehicle with two fellow soldiers, Specialist (SPC) KC and Private First Class (PFC) PS, as passengers. Appellant crossed the center line of a highway and struck another vehicle driven by Mr. JC. The collision led to the deaths of SPC KC and PFC PS, and severely injured Mr. JC. Appellant's blood alcohol content registered at 0.232%, which was almost three times the legal limit in Colorado.

At a general court-martial held in January 2011, appellant was found guilty, after entering mixed pleas, of one specification of drunken operation of a vehicle

causing injury, two specifications of involuntary manslaughter, one specification of aggravated assault with a means likely to produce death or grievous bodily harm, and one specification of reckless endangerment, in violation of Articles 111, 119, 128, and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 911, 919, 928, 934 (2006) [hereinafter UCMJ]. A panel of officer and enlisted members sentenced appellant to a bad-conduct discharge, confinement for ten years, forfeiture of all pay and allowances, and a reduction to the grade of E-1. The convening authority (CA) approved the sentence, except that portion extending to confinement in excess of nine years and six months.

This court affirmed the findings and sentence on 28 October 2013. *United States v. Peters*, ARMY 20110057, 2013 CCA LEXIS 1124 (Army Ct. Crim. App. 28 Oct. 2013) (summ. disp.). On 12 February 2015, the United States Court of Appeals for the Armed Forces (CAAF) reversed the decision of this court, set aside the findings and sentence, and authorized a rehearing.[1] *United States v. Peters*, 74 M.J. 31, 36 (C.A.A.F. 2015). The United States Disciplinary Barracks (USDB) released appellant from confinement on 4 April 2015 after having served 1,514 days of his sentence to confinement.

At the rehearing, appellant pleaded guilty before a military judge to the same offenses of which he was found guilty at his original trial, with the exception of the Article 134, UCMJ, offense.[2] The military judge sentenced appellant to a bad-conduct discharge and confinement for 65 months, and credited appellant with 1,514 days of confinement. In accordance with a pretrial agreement, the CA approved the adjudged sentence, except that portion extending to confinement in excess of 1,514 days.

This case is before the court for review under Article 66, UCMJ. Appellant assigns two errors to this court, only one of which warrants discussion and relief. Specifically, appellant asserts his defense counsel were ineffective in the post-trial phase of his court-martial by failing to submit matters pursuant to Rules for Courts-Martial [hereinafter R.C.M.] 1105 and 1106.[3] While we do not find his defense

---

[1] The CAAF concluded that the military judge erred in failing to excuse a member based on implied bias.

[2] The military judge granted trial counsel's motion to dismiss this charge.

[3] In his other assignment of error, appellant asserts the military judge erred in failing to merge the Specification of Charge I, drunk driving causing injury, with the Specification of Charge III, aggravated assault of Mr. JC, as an unreasonable multiplication of charges. In his pretrial agreement, appellant explicitly agreed to "waive all waivable motions," and affirmatively waived this issue on the record. We, therefore, find the issue to be without merit. *See United States v. Gladue*, 67 M.J. 311, 314 (C.A.A.F. 2009).

counsel were *ineffective*, we do find counsel were *deficient* in the post-trial stage of trial and that appellant has made a colorable showing of prejudice as a result.

## BACKGROUND

### A. *The Record and Post-Trial and Appellate Rights Acknowledgement*

At trial, Captain (CPT) CS and a Senior Defense Counsel (SDC), Major (MAJ) AJ, represented appellant. Prior to announcing the sentence, the military judge engaged in a colloquy with appellant concerning his post-trial and appellate rights. On the record, appellant acknowledged his rights as well as his consent for counsel to submit appropriate clemency matters on his behalf. The military judge asked appellant, "[i]f your defense counsel tries to contact you, but is unsuccessful, do you authorize them, him or her, whichever one it will be, to submit clemency matters on your behalf to the convening authority as he or she deems appropriate?" Appellant agreed counsel could submit clemency matters if CPT CS could not contact him. Captain CS indicated he would handle post-trial matters on behalf of appellant.

Appellant executed a standard Defense Counsel Assistance Program (DCAP) Post-Trial and Appellate Rights form (PTAR), which the military judge entered on the record as Appellate Exhibit IV. In paragraphs 3b. and 3c. of the PTAR, appellant acknowledged he had ten days after receipt of the staff judge advocate's (SJA) post-trial recommendation (SJAR) to submit matters to the CA, a period which could be extended by no more than twenty additional days. In paragraph 3e., appellant authorized CPT CS to submit matters pursuant to R.C.M. 1105 and 1106 on his behalf if, after making reasonable efforts in accordance with Trial Defense Service (TDS) policy, CPT CS was unable to contact him. Paragraph 11e. provided, "[CPT CS] will submit R.C.M. 1105 and 1106 matters" in appellant's case in accordance with appellant's "election in paragraph 3e above." In the same paragraph, appellant acknowledged he "must stay in contact with [his] counsel to assist [counsel] in collecting and preparing the matters for submission."

As appellant had served the maximum term of confinement agreed upon in his pretrial agreement, the Army placed him on appellate leave soon after his court-martial adjourned. He provided CPT CS with contact information, including a phone number and email, where he could be reached during the post-trial process.

### B. *Post-Trial Processing*

The SJA provided the SJAR to the CA on 12 November 2015. On 13 November 2015, CPT CS requested a twenty-day extension to submit clemency

matters.[4]  The allied papers reflect that appellant was served the SJAR and the record of trial on 23 November 2015.  The government granted defense counsel an extension until 17 December 2015 to submit R.C.M. 1105 and 1106 matters.

On 16 December 2015, CPT CS again requested an additional twenty days to submit matters, stating he was unable to contact appellant and was required under TDS policy to "make continued unsuccessful attempts to contact [appellant] for sixty days before [his] first-line supervisor may authorize [him] to submit matters without consultation from [appellant]."[5]  Before filing this request, CPT CS consulted MAJ AJ concerning the post-trial deadline.  Major AJ advised CPT CS she could not provide "permission" to submit matters without first speaking to appellant because the sixty-day window set forth in the TDS policy had not elapsed.  On 22 December 2015, the CA denied the request, stating R.C.M. 1106(f)(5) only authorized [him] to extend the initial ten-day period for not more than twenty additional days.  The CA informed defense counsel that he would not take action until 5 January 2016 and that matters could be submitted before then.  Captain CS's continued efforts thereafter to contact appellant proved fruitless.

On 4 January 2016, CPT CS renewed his request for an additional twenty-day extension to submit clemency matters and again referenced the TDS "policy" as the basis for his request.  On 5 January 2016, the CA denied the request and highlighted the fact that it had already been forty-nine days since service of the SJAR and record of trial on appellant.  The defense counsel did not submit clemency matters on appellant's behalf, and the CA took final action on 5 January 2016.

### C. Post-Trial and Affidavits

On appeal, both appellant and CPT CS submitted sworn affidavits addressing the issue of ineffective assistance of counsel during the post-trial processing of the case.  Appellant asserts that prior to trial, he authorized his defense counsel to

---

[4] Article 60, UCMJ, provides that an accused has up to thirty days to submit matters to the convening authority.  UCMJ art. 60(b)(2); *see United States v. Banks*, 75 M.J. 746, 749 (Army Ct. Crim. App. 2016) (explaining Article 60(b)(2), UCMJ, did not authorize CAs to approve extensions beyond twenty days after appellant's initial ten days to submit R.C.M. 1105 or 1106 clemency matters).

[5] The Trial Defense Service (TDS) "policy" is contained in *DCAP Sends*, Vol. 7, No. 4, (4 February 2013), Post-Trial Duties and Responsibilities.  The policy states, "[t]he defense counsel's first-line supervisor . . . can authorize the defense counsel to submit matters even though the client cannot be consulted."

submit clemency matters on his behalf and indicated as such on the PTAR.[6] He likewise told the military judge his defense counsel were authorized to submit matters. Appellant states that he told CPT CS he wanted clemency matters submitted because he took responsibility for his crimes and spent 1,514 days as a model inmate at the USDB. Appellant wanted to ask the CA to disapprove his punitive discharge.

Captain CS's affidavit lays out, in exacting detail, the commendable efforts of CPT CS and MAJ AJ to contact appellant in order to submit post-trial matters. Captain CS claims he discussed with appellant, immediately after trial, the "scope of a request for clemency available in his case," with the primary point of discussion centering on the submission of a post-trial request for discharge in lieu of trial, or a so-called "Chapter 10" request, pursuant to Army Reg. 635-200, Personnel Separations: Enlisted Personnel [hereinafter AR 635-200], ch. 10 (6 June 2005).[7] On 25 November 2015, CPT CS later emailed appellant the draft discharge request and a draft supporting memorandum that outlined a two-pronged request for approval of the discharge request or, alternatively, disapproval of the punitive discharge. Appellant did not respond to this email or numerous other telephone calls and emails from CPT CS. As the deadline for filing clemency matters drew near, CPT CS sought guidance from MAJ AJ, his SDC, and the Regional Defense Counsel (RDC). Both the SDC and RDC advised CPT CS[8]* to follow TDS policy, which required a defense counsel to wait sixty days from the last contact with a client to submit clemency matters. Ultimately, CPT CS did not submit matters on appellant's behalf before the CA acted on 5 January 2016.

## LAW AND DISCUSSION

As an initial matter, we note that under R.C.M. 1105 the failure to submit matters "shall be deemed a [forfeiture] of the right to submit such matters." R.C.M.

---

[6] The PTAR provided defense counsel, in accordance with TDS policy, could submit matters if he was unable to communicate with appellant. Nothing in the PTAR, appellant's affidavit, or CPT CS's affidavit shows that CPT CS ever explained to appellant what this TDS policy entailed.

[7] To the degree these affidavits may conflict, we see no need to order a post-trial evidentiary hearing pursuant to *United States v. DuBay*, 17 U.S.C.M.A. 147, 37 C.M.R. 411 (1967). For purposes of this appeal, it is only relevant that CPT CS failed to submit matters, although authorized to do so, and appellant and CPT CS agreed to ask, at least in the alternative, the CA to disapprove a punitive discharge. On these issues, the affidavits submitted are factually adequate. *See United States v. Ginn*, 47 M.J. 236, 248 (C.A.A.F. 1997).

[8] Corrected

1105(d)(1); *see also* UCMJ art. 60(b)(2). Thus, appellant forfeited his right to submit matters to the CA. However, this issue is collateral to appellant's assigned error that his attorneys were ineffective for not submitting post-trial matters when they were specifically authorized to do so.

### A. Test for Ineffective Assistance of Counsel

We review claims that an appellant did not receive effective assistance of counsel de novo. *United States v. Akbar*, 74 M.J. 364, 379 (C.A.A.F. 2015); *United States v. Datavs*, 71 M.J. 420, 424 (C.A.A.F. 2012). "In order to prevail on a claim of ineffective assistance of counsel, an appellant must demonstrate both (1) that his counsel's performance was deficient, and (2) that this deficiency resulted in prejudice." *United States v. Green*, 68 M.J. 360, 361-62 (C.A.A.F. 2010) (citing *Strickland v. Washington*, 466 U.S. 668, 687, (1984)). This results in a "doubly deferential" review of counsel's performance. *Cullen v. Pinholster*, 563 U.S. 170, 171 (2011) (internal quotation marks and citation omitted).

Under the first *Strickland* prong, appellant must show "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." 466 U.S. at 687. The relevant issue is whether counsel's conduct failed to meet an objective standard of reasonableness or whether it was outside the "wide range of professionally competent assistance." *Id.* at 690. In determining this issue, courts "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance[.]" *Id.* at 689.

The Sixth Amendment guarantee of effective assistance of counsel extends to post-trial processing. *United States v. Gilley*, 56 M.J. 113, 124 (C.A.A.F. 2001). "[T]he military accused has the right to the effective assistance of counsel during the pretrial, trial, and post-trial stages" of his court-martial. *United States v. Hicks*, 47 M.J. 90, 92 (C.A.A.F. 1997) (citing *United States v. Carter*, 40 M.J. 102, 105 (C.M.A. 1994); *United States v. Fluellen*, 40 M.J. 96, 98 (C.M.A. 1994)). This guarantee of effective assistance of counsel is especially important during the post-trial phase because it is the accused's "best hope for post-trial relief." *United States v. Howard*, 47 M.J. 104, 106 (C.A.A.F. 1997). Trial defense counsel must consult with the client regarding clemency and other matters, and must comply with the client's desires regarding submissions to the CA. *See United States v. Hood*, 47 M.J. 95, 97 (C.A.A.F. 1997). As such, a defense counsel should neither submit matters over their client's objection, nor fail to present matters that the client desires the CA to consider. *See Hicks*, 47 M.J. at 93.

When assessing *Strickland*'s second prong for prejudice, we require a showing that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." 466 U.S. at 694.

That requires a "substantial," not just "conceivable," likelihood of a different result. *Harrington v. Richter*, 562 U.S. 86, 112 (2011).

In the context of an allegation of ineffective assistance during the post-trial phase, however, because of the highly discretionary nature of the CA's clemency power, appellant meets this burden if he makes "some colorable showing of possible prejudice."[9] *United States v. Lee*, 52 M.J. 51, 53 (C.A.A.F. 1999) (citing *United States v. Wheelus*, 49 M.J. 283, 289 (C.A.A.F. 1998)); *see also United States v. Rosenthal*, 62 M.J. 261, 263 (C.A.A.F. 2005); *United States v. Fordyce*, 69 M.J. 501, 503 (Army Ct. Crim. App. 2010). "[W]hen an appellant attacks his trial defense counsel for failure to submit clemency matters, he must specify what he would have submitted, but for his counsel's alleged deficiency." *United States v. Clemente*, 51 M.J. 547, 551 (Army Ct. Crim. App. 1999) (citing *Hood*, 47 M.J. at 98). "By definition, assessments of prejudice during the clemency process are inherently speculative*." United States v. Lowe*, 58 M.J. 261, 263 (C.A.A.F. 2003). The "[CAAF] and the courts of criminal appeals will not speculate as to what the [CA] would have done." *Id.* at 264. If the appellant makes a "colorable showing of possible prejudice," a reviewing court should give the appellant the "benefit of the doubt" and "not speculate on what the [CA] would have done" had defense counsel commented. *United States v. Chatman*, 46 M.J. 321, 323-24 (C.A.A.F. 1997).

---

[9] Federal Appellate Courts similarly apply the "colorable" standard when assessing whether to return a case to the trial court because of an ineffective assistance of counsel claim on appeal. For example, in deciding habeas petitions, "a habeas petitioner must establish that his allegations, if proven, would constitute a colorable claim, thereby entitling him to relief." *See, e.g.*, *Correll v. Stewart*, 137 F.3d 1404, 1411 (9th Cir. 1997); *United States v. Mohammed*, 693 F.3d 192, 202, (D.C. Cir. 2012) ("We do not reflexively remand, but neither will we hesitate to remand when a trial record is insufficient to assess the full circumstances and rationales informing the strategic decisions of trial counsel."); *United States v. Moore*, 651 F.3d 30, 85 (D.C. Cir. 2011) (the D.C. Circuit generally remand's "colorable claim[s]" of ineffective assistance to the district court to make any necessary factual findings). These courts apply *Strickland* and assess the record to determine if an appellant has established a "colorable" claim of ineffective assistance of counsel. If the record is not clear, appellate courts will determine if the record needs to be further developed on remand. A "colorable" claim does not equate to appellant establishing an actual claim of ineffective assistance of counsel under *Strickland*.

*B. Counsel's Performance was Deficient*

Based on appellant's authorization, CPT CS and MAJ AJ had a professional obligation to submit post-trial clemency matters to the CA.[10]  As CPT CS was unsuccessful in his many attempts to contact appellant, this obligation extended to submitting matters on appellant's behalf that CPT CS deemed appropriate.  Captain CS was aware of the time limitations in R.C.M. 1105 and 1106, as well as the CA-established deadline of 5 January 2016—which actually exceeded the time limits set forth in these rules—for submitting matters.  Nonetheless, counsel failed to submit anything on behalf of appellant.

Captain CS had the basic ingredients with which to file a post-trial request with the CA.  A 25 November 2015 email submitted with CPT CS's affidavit to this court shows that, in addition to submitting a Chapter 10 request, appellant wanted to ask the CA to disapprove his punitive discharge.[11]  Captain CS had at his disposal post-trial matters submitted after the original trial,[12] defense exhibits submitted during the rehearing, and the substance of his conversations with appellant after trial, to draw from in formulating a submission.  In short, CPT CS could and should have, at a minimum, asked the CA to exercise clemency on appellant's behalf.

Captain CS relied on the TDS policy and lack of "permission" from his SDC and co-counsel, MAJ AJ, and the RDC when electing not to file matters on appellant's behalf.[13]  Major AJ likewise had an obligation to appellant to either

---

[10] *See generally*, Army Reg. 27-26, Legal Services: Rules of Professional Conduct for Lawyers [hereinafter AR 27-26], App. B, r.1.2 (1 May 1992).

[11] An accused must sign a Chapter 10 request acknowledging that he has been counseled and, generally, understands the ramifications of the request if approved by the CA.  *See* AR 635-200, para. 10-2*c*.  Appellant never signed nor returned the Chapter 10 document to CPT CS, thus preventing its submission to the CA for action.

[12] In the R.C.M. 1105 and 1106 matters submitted at his first trial, appellant asked the CA to reduce his sentence to confinement to seven years, citing to his attendance in courses and counseling at the USDB and his good behavior and work performance while confined.

[13] At least as interpreted by CPT CS and MAJ AJ, the policy of the trial defense service conflicted with Article 60(b)(2), UCMJ.  Additionally, the policy diminished the colloquy that appellant had with the military judge.  The military judge told appellant that it was his duty to stay in contact with his attorney.  The TDS policy

(continued . . .)

ensure post-trial matters were submitted or authorize CPT CS to do so. *See generally United States v. Garcia*, 59 M.J. 447, 450 (C.A.A.F. 2004) ("We evaluate the combined efforts of the defense as a team rather than evaluating the individual shortcomings of any single counsel."). The procedural rules and ethical obligation to submit matters on behalf of appellant took precedence over a TDS policy. This is especially true when, as here, the record is absent any indication appellant was advised of the particulars of the TDS policy and the potential it could result in matters not being submitted at all.[14]

In short, we find CPT CS and MAJ AJ's performance post-trial to be deficient.

### *C. Appellant has made a Colorable Showing of Prejudice.*

We find appellant has made a colorable showing of prejudice in that the CA was not presented with a request for clemency on behalf of appellant. However, while we conclude appellant's counsel were deficient for missing the filing deadline for post-trial matters, we do not find counsel were ineffective. Key to our decision is that we need not decide under *Strickland* whether appellant suffered actual prejudice. By our action in the decretal paragraph, we are directing a new SJAR and action, which will give appellant the opportunity to submit matters under R.C.M. 1105 and 1106 as he and his counsel see fit.

### **CONCLUSION**

The action of the convening authority, dated 5 January 2016, is set aside. The record of trial will be returned to The Judge Advocate General for a new SJAR and action by the same or a different convening authority in accordance with Article 60(c)-(e), UCMJ.

Senior Judge MULLIGAN concurs.

---

(. . . continued)
placed the burden on counsel. The appellant also acknowledged that the authorization to submit clemency matters had to be in accordance with TDS policy. Appellant told the military judge that he authorized his counsel to submit matters on his behalf. The TDS policy required that CPT CS give little weight to that election.

[14] We understand CPT CS was placed in a bind by the TDS policy *and* the explicit direction of his supervisory counsel. *See generally* AR 27-26, App. B, r.5.1, 5.2 cmt. However, for purposes of our resolution of the matters before us, we do not and need not comment as to whether a violation of the Rules of Professional Conduct occurred in this case.

WOLFE, Judge, concurring:

In *United States v. Banks*, this court stated the proper lens through which to address a counsel's failure to submit clemency matters to the convening authority is ineffectiveness. 75 M.J. 75 M.J. 746, 750 (Army Ct. Crim. App. 2016) (citing *Strickland*, 466 U.S. 668). Today, the majority correctly applies that framework. I agree that counsel's performance was deficient.

I have some concerns, however, with the standard this court uses in assessing prejudice. Today, we set aside the approved findings and sentence based only on a showing of "colorable prejudice." That is, we are granting relief for error without finding *actual* prejudice as *Strickland* or Article 59(a), UCMJ, would require.[1]

The majority's resolution of this issue is entirely consistent with our superior court's decision in *United States v. Lee*. 52 M.J. 51, 53 (C.A.A.F. 1999) (requiring only a "colorable showing" of prejudice for post-trial IAC claims). However, subsequent to *Lee* the CAAF determined that military accuseds do not enjoy constitutional protections "above and beyond the panoply of rights provided to them by the plain text of the Constitution." *United States v. Vasquez*, 72 M.J. 13 (C.A.A.F. 2012). Thus, it appears we are doing one of two things. First, we could be providing appellant with greater constitutional rights to counsel (at least in the post-trial phase of the proceedings) in violation of *Vasquez*. Second, we could be setting aside the CA's action and providing appellant with relief without actually finding prejudice. Neither option is palatable.

Nonetheless, I concur entirely with the majority's decision and reasoning in this case. First and foremost, the CAAF has not reversed its decision in *Lee*, and the decision has been followed repeatedly. Second, assuming we found counsel's performance deficient, the government did not explicitly oppose appellant's requested relief of a new post-trial action.

A federal defendant who shows deficient performance and a colorable claim of prejudice is entitled to an evidentiary hearing. *See e.g.*, *Phillips v. Woodford*, 267

---

[1] I agree with the majority's conclusion that appellant has met the burden of establishing colorable prejudice. If required to show actual prejudice, appellant has not met his burden. Appellant caused the death of two fellow soldiers, severely injured a civilian, the convening authority previously denied a request for an administrative discharge, and both parties specifically negotiated a sentencing cap as part of a pretrial agreement. Nonetheless, when appellant submits *zero* clemency matters in a case where the CA had the power to grant clemency relief for any reason or no reason, and the government submits no evidence as to what the CA would have done, *see Helm*, *infra*, the showing of prejudice is colorable.

F.3d 966, 983 (9th Cir. 2001) ("[W]e conclude that Phillips has raised a colorable claim of prejudice, a sufficient showing to entitle him to an evidentiary hearing on his ineffective assistance of counsel claim."). In military justice practice, this court may order evidentiary hearings in accordance with *Untied States v. DuBay*, 17 U.S.C.M.A. 147, 37 C.M.R. 411 (1969). Thus, here, we could order a hearing to provide appellant with the opportunity to establish actual prejudice under *Strickland*. The military judge would determine whether appellant met his burden of showing prejudice. Such a course of action would be consistent with *Strickland* and *Vasquez*.

However, I nonetheless concur with majority's decision. The CAAF has not revisited *Lee*, our own binding precedent in *United States v. Fordyce*, 69 M.J. 501 (Army Ct. Crim. App. 2011), follows *Lee*, and the government (perhaps for logistical reasons) has not specifically requested an alternative outcome. Finally and without endorsing this practice, we do not have before us an affidavit from the CA to take us beyond the realm of speculation as to what action he would have taken if he had received the specified clemency matters from appellant. *See United States v. Helm*, ACM 38901, 2017 CCA LEXIS 87 (A.F. Ct. Crim. App. 8 Feb. 2017) (finding no colorable showing of prejudice from erroneous legal advice when the government produced an affidavit from the CA that disclaimed favorable clemency action even if he had been properly advised).

Thus, while I note what appears to me to be an inconsistency in how we treat issues of ineffective assistance of counsel, I concur fully in the majority's decision.

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court