UNITED STATES, Appellee

v.

Matthew K. TRAVIS, Sergeant
U.S. Marine Corps, Appellant

No. 07-0482

Crim. App. No. 200600519

United States Court of Appeals for the Armed Forces

Argued March 10, 2008

Decided May 15, 2008

ERDMANN, J., delivered the opinion of the court, in which
EFFRON, C.J., and STUCKY and RYAN, JJ., joined. BAKER, J.,
filed a separate dissenting opinion.


Counsel


For Appellant: Captain S. Babu Kaza, USMC (argued); Lieutenant
Aimee M. Souders, JAGC, USNR (on brief).

For Appellee: Major Brian K. Keller, USMC (argued); Commander
Paul C. LeBlanc, JAGC, USN (on brief); Lieutenant David H. Lee,
JAGC, USN.

Military Judge: D. M. Jones


**This opinion is subject to revision before final publication.**

United States v. Travis, No. 07-0482/MC

Judge ERDMANN delivered the opinion of the court.

Sergeant Matthew K. Travis was a Marine guard and supervisor at a detention facility in Iraq. In conjunction with other guards, Travis devised a scheme to deal with an unruly Iraqi detainee by attaching electrical wires to the detainee's cage to prevent the detainee from grabbing the cage. When this failed to electrify the cage, other guards attached the wires directly to the detainee's body. Pursuant to his pleas, Travis was found guilty of willful dereliction of duty, attempted cruelty and maltreatment of an Iraqi national detainee, conspiracy to commit cruelty and maltreatment of an Iraqi national detainee, and false official statement.

He was sentenced to a bad-conduct discharge, confinement for fifteen months, and reduction to the lowest enlisted grade. The United States Navy-Marine Corps Court of Criminal Appeals affirmed the findings but granted sentence relief under Article 66(c), Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 866(c) (2000), by reducing the confinement to twelve months. United States v. Travis, No. NMCCA 200600519, 2007 CCA LEXIS 68, 2007 WL 1701351 (N-M. Ct. Crim. App. Feb. 27, 2007).

We granted review to determine whether the lower court erred in finding that Travis was not prejudiced when the staff judge advocate (SJA) failed to submit clemency matters to the convening authority prior to action and when the SJA

2

subsequently did not forward those clemency materials to the convening authority for over a year.  Because there was a second action taken by the same convening authority after consideration of Travis's clemency submission, we conclude that Travis suffered no material prejudice.

## Background

Post-trial processing of this case involved back and forth electronic communication between Travis and his defense counsel who were located at Camp Pendleton, California, and the SJA and convening authority who were deployed in Iraq.  The SJA recommendation was completed on September 29, 2004.  On November 8, the recommendation was served on the defense counsel for comment pursuant to Rule for Courts-Martial (R.C.M.) 1106(f)(1). On November 17, defense counsel requested an additional twenty-four hours within which to submit clemency matters because he had not received a letter from Lieutenant General (LTG) Mattis. The request was granted.

On November 22, 2004, defense counsel noted that he was still waiting on the clemency letter from LTG Mattis.  In an addendum to the SJA recommendation dated December 1, 2004, the SJA noted that the defense had been given two extensions of time up to November 29 to submit clemency matters and no clemency matters had been received.  Action was taken on December 4, and no clemency matters were considered by the convening authority.

Upon reviewing the action on December 9, 2004, defense counsel noted that there was no reference to consideration of clemency materials. In acknowledging receipt of the convening authority's action, defense counsel inquired about the clemency materials. The SJA responded that no clemency matters had been received. In response, on December 13, 2004, the defense was able to retrieve a copy of an electronic message purporting to show that Travis's clemency request and supporting materials had been sent to the SJA on November 29th. A copy of this clemency package was subsequently provided to the SJA. Upon receipt of these materials, the SJA notified defense counsel that the matters were late and that they would not be forwarded to the convening authority.

On January 10, 2005, Travis filed a petition for extraordinary relief in the form of a writ of mandamus with the Court of Criminal Appeals. He requested that the Navy-Marine Corps court order the convening authority to withdraw the action dated December 4, 2004, and take new action after considering his clemency submissions. Travis's request for extraordinary relief was denied by the Navy-Marine Corps court on January 13, 2005.

On November 30, 2005, a second addendum to the SJA recommendation was prepared. This addendum recommended that the convening authority withdraw the prior action because "the

4

previous Convening Authority's Action did not note a companion case" and also recommended that the convening authority consider the clemency matters that were "submitted by the defense after the time for submission had expired." Pursuant to this addendum, the same officer who took the initial action on the case withdrew his previous action and on December 2, 2005, took a new action approving the sentence as adjudged. The new action specifically acknowledged consideration of the defense clemency submissions.

When Travis's case was reviewed by the Court of Criminal Appeals, that court considered issues of post-trial delay and the impact of the SJA's failure to forward clemency matters to the convening authority. Travis, 2007 CCA LEXIS 68, at *3, 2007 WL 1701351, at *1. Concerning the clemency issue, the court stated, "Based on the record before us we are unable to determine whether these [clemency] matters were submitted before or after [the convening authority's December 4, 2004 action]." Id. at *5-*6, 2007 WL 1701351, at *2. The Navy-Marine Corps court went on to hold that if the clemency matters were received prior to the December 4, 2004, action there was error, but that error was cured when the December 2, 2005, action was taken after consideration of the clemency submissions. Id. at *6, 2007 WL 1701351, at *2. Alternatively, the lower court indicated that if the clemency matters were received after the

December 4, 2004, action, there was no error.  Id.  In either event, the lower court held that there was no material prejudice to Travis's substantial rights.  Id. at *5, 2007 WL 1701351, at *2.

## Discussion

A convicted servicemember has the right to submit matters to the convening authority that reasonably tend to affect the decision whether to approve or disapprove any findings of guilt or to approve, reduce, or disapprove the adjudged sentence. Article 60(b)(1), UCMJ, 10 U.S.C. § 860(b)(1) (2000); R.C.M. 1105(a), (b).  These matters may be submitted within ten days after the authenticated record of trial and SJA recommendation are served on the accused, and additional time may be requested for good cause shown.  Article 60(b)(1), UCMJ; R.C.M. 1105(c)(1).  "Failure to submit matters within the time prescribed by this rule shall be deemed a waiver of the right to submit such matters."  R.C.M. 1105(d)(1).  A convening authority must consider matters submitted by the accused.  Article 60(c)(2), UCMJ; R.C.M. 1107(b)(3).

Under these rules, the threshold determination in this case is when Travis's clemency matters were submitted.  However, on this record the lower court could not determine when the clemency matters were submitted.  2007 CCA LEXIS 68, at *5-*6, 2007 WL 1701351, at *2.  As a court of law, we lack the

United States v. Travis, No. 07-0482/MC

authority to make factual determinations.  See United States v.
Wise, 64 M.J. 468, 470 (C.A.A.F. 2007); United States v. Ginn,
47 M.J. 236, 244-45 (C.A.A.F. 1997); see also United States v.
DuBay, 17 C.M.A. 147, 37 C.M.R. 411 (1967).

In terms of when clemency matters are "submitted", we agree
that "submission" of clemency matters is less formal than
"service" required by other rules in the Manual for Courts-
Martial.[1]  However, in this case it is not necessary to define
the qualitative subtleties that may or may not distinguish
completed "submission" from completed "service."  Regardless of
when the defense "submitted" the clemency matters or how long it
took the SJA to forward the clemency package to the convening
authority, if Travis would not be entitled to relief under any
construction of the facts, any alleged error would be harmless.
"'Whether an error, constitutional or otherwise, was harmless,
is a question of law that we review de novo.'"  United States v.
Hall, 66 M.J. 53, 54 (C.A.A.F. 2008) (quoting United States v.
McCollum, 58 M.J. 323, 342 (C.A.A.F. 2003)).

We conclude, as did the court below, that Travis has not
suffered any material prejudice to a substantial right.  Article

---

[1] See, e.g., R.C.M. 602 (service of charges), R.C.M. 702(h)(3)
(service of objections to written interrogatories), R.C.M.
703(e)(2)(D) (service of subpoenas), R.C.M. 905(h)(i) (service
of written motions), R.C.M. 1104(b)(1)(A) (service of
authenticated record of trial), R.C.M. 1104(d)(3) (service of
certificate of correction), and R.C.M. 1106(f)(1) (service of
SJA recommendation).

59(a), UCMJ, 10 U.S.C. § 859(a) (2000).  We cannot and do not substitute our judgment about the merit of a request for clemency or the weight to be given any specific clemency recommendation by a convening authority.  Clemency is a "'highly discretionary'" command function of a convening authority. United States v. Rosenthal, 62 M.J. 261, 263 (C.A.A.F. 2005) (per curiam) (quoting United States v. Wheelus, 49 M.J. 283, 289 (C.A.A.F. 1998)).  Where a servicemember has been deprived of full and fair clemency consideration by a convening authority, we are not reluctant to return a case for an otherwise proper review and action.  See, e.g., id.  In this case, however, we have the benefit of knowing what the results of a proper clemency consideration would have yielded, and a remand for a new action is not required.

Major General (MG) Natonski took action on both December 4, 2004, and December 2, 2005.  The offenses in this case are serious.  Travis's conduct reflects disdain for the human dignity of detainees under American control and custody, as well as an abandonment of his supervisory role as a noncommissioned officer.  The record reflects that at the time of the second action, MG Natonski had before him all the required documents and submissions, including Travis's complete clemency package with LTG Mattis's clemency letter.  In taking this action, MG Natonski stated that he "considered the results of trial, the

8

clemency submitted by the defense counsel on behalf of the accused in accordance with Rule for Courts-Martial 1105, MCM, (2002 Ed.), the Staff Judge Advocate's Recommendation and the entire record of trial."  With all that in mind, MG Natonski approved the sentence as adjudged.

There is nothing to suggest that in taking the second action MG Natonski did not perform his duty as convening authority fully, fairly, and in accordance with law.  This action demonstrates clearly and convincingly that even if Travis's clemency materials had been considered at the time of the initial action, he would have been afforded no clemency.  In assessing prejudice, we also take into account that the Court of Criminal Appeals reduced the period of confinement when it granted sentence relief under Article 66(c), UCMJ, to address post-trial delay.  Travis, 2007 CCA LEXIS 68, at *8, 2007 WL 1701351, at *3.  We conclude, therefore, that any possible error relating to the post-trial processing of clemency materials in this case was harmless.

We note that although the defense counsel and the SJA were acting in good faith, simple steps could have been taken to prevent this situation from arising in the first place.  We recognize that the distance between Camp Pendleton, California, and Iraq is substantial, and that both distance and combat operations compound the usual difficulties of communication and

post-trial processing.  So too should the parties recognize that they are functioning in a more complex environment and, as a result, devote more attention to detail.

Defense counsel should take reasonable steps to guarantee that clemency submissions have in fact been received under any circumstances but particularly where communications are problematic.  An SJA should be attentive to whether the defense intends to submit clemency matters and, where there are clear indications that the defense intends to submit matters, the SJA need not rush to action in the absence of the anticipated clemency material -- particularly where communications are problematic.  We urge a commonsense approach to guarantee a convicted servicemember gets full and fair clemency consideration and that convening authorities have everything they need to prudently exercise their unique clemency function at action.

## Decision

The decision of the United States Navy-Marine Corps Court of Criminal Appeals is affirmed.

BAKER, Judge (dissenting):

Although Appellant's conduct was egregious, I do not share the majority's confidence that the second convening authority's action remedied any error or potential prejudice resulting from the convening authority's failure, during his first review, to consider the letter from Lieutenant General (LtG) J. N. Mattis.

First, the letter in question did not recommend clemency generally, or negate the seriousness of the offenses at issue.  Rather, the recommendation was limited to a recommendation for confinement relief on behalf of a member of his command during combat operations in Iraq.

Second, the letter was from LtG Mattis.  While the text of the letter is relatively perfunctory, its recommendation is not.  Moreover, the letter is from the Marine ground combat commander who led the 1st Marine Division's push to Baghdad, and thus is a member of the Marine Corps' "warrior elite."  (His successor in command at the First Marine Division would, of course, know this, as would any other Marine).  During my tenure on the Court, I have not seen a clemency letter from a general, let alone one from a general with the combat stature of LtG Mattis. In the context of the Marine Corps, a letter from a warrior general to a subordinate commander might well have resulted

in some measure of confinement clemency, at least on the order of symbolic relief.

Third, the second convening authority's action could not have addressed any potential prejudice resulting from the delay in submitting the Mattis letter because at the time of the second action Appellant had already served the duration of his confinement. Also, LtG Mattis's recommendation for clemency addressed confinement relief alone. Thus, we do not "have the benefit of knowing what the results of a proper clemency consideration would have yielded." United States v. Travis, 66 M.J. __ (8) (C.A.A.F. 2008).

Nor is it possible in such a context to conclude, as does the majority, that Appellant's clemency request received full and fair consideration. The majority's analysis might ordinarily work as a matter of legal logic, that is, a second action might normally cure the error in the first action in which no relief was given. However, it falls short when considered in the actual military context presented. LtG Mattis recommended confinement clemency for a combat veteran of battles the general himself directed. A convening authority who acts without benefit of such a recommendation cannot be said to have acted on the "full"

package.  Neither is the review "fair," if the letter is subsequently considered after its recommendation is moot.

As a result, I would grant meaningful confinement relief and respectfully dissent.