# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
LIND, KRAUSS, and PENLAND
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**Specialist CHRISTOPHER A. BORDEN**
**United States Army, Appellant**

ARMY 20130493

Headquarters, U.S. Army Military District of Washington
Scott Lawson, Military Judge
Colonel Corey L. Bradley, Staff Judge Advocate (pretrial)
Lieutenant Colonel Paul E. Golden, Acting Staff Judge Advocate (recommendation)
Colonel James R. Agar, II, Staff Judge Advocate (addenda)

For Appellant: Colonel Kevin M. Boyle, JA; Captain Brian D. Andes, JA; Lieutenant Colonel Jonathan F. Potter, JA (on brief).

For Appellee: Colonel John P. Carrell, JA; Major Albert G. Courie, JA; Major Daniel D. Derner, JA; Captain Christopher A. Clausen, JA (on brief).

6 July 2015

---------------------------------
OPINION OF THE COURT
---------------------------------

PENLAND, Judge:

A military judge sitting as a special court-martial convicted appellant, pursuant to his pleas, of two specifications of absence without leave terminated by apprehension; one specification of failure to repair; one specification of willful disobedience of a superior commissioned officer; and one specification of failure to obey a lawful order in violation of Articles 86, 90, and 92, Uniform Code of Military Justice [hereinafter UCMJ], 10 U.S.C. §§ 886, 890, 892 (2012). The military judge sentenced appellant to a bad-conduct discharge, confinement for 90 days, and reduction to the grade of E-1. The convening authority approved the adjudged sentence and credited appellant with 84 days against the sentence to confinement.

We review this case pursuant to Article 66, UCMJ. Appellant assigns one error asserting he is entitled to a new review and action because his defense counsel

failed to submit post-trial matters to the convening authority in accordance with Rule for Courts-Martial [hereinafter R.C.M.] 1105. The government concedes a new review and action is warranted. We accept the government's concession.

## PROCEDURAL BACKGROUND

At trial, the military judge and appellant's defense counsel advised him of his post-trial and appellate rights. Part of the colloquy between the trial judge, appellant, and defense counsel included the following discussion:

> MJ: Do you understand that if your defense counsel cannot locate you, it will be difficult for him to know what to submit for you to the Convening Authority?
>
> ACC: Yes, Your Honor.
>
> MJ: If your defense counsel tries to contact you but is unsuccessful, do you authorize him to submit clemency matters on your behalf to the Convening Authority as he deems appropriate?
>
> ACC: I do, Your Honor.
>
> . . . .
>
> MJ: Captain [SM], will you be responsible for post-trial actions in this case and will you be the person upon whom the Staff Judge Advocate's Post Trial Recommendation is to be served?
>
> DC: Most likely, sir. There--but I will discuss with the court reporter and other people because of my possible transition.
>
> MJ: Okay. All right. Well, I recommend you do that and discuss with [appellant], as well, obviously.

The Post-Trial and Appellate Rights Form (PTAR), attached to the record as an appellate exhibit, mirrored the colloquy. The PTAR stated, *inter alia*, that: "I understand that I must work with my defense counsel to assist him/her in collecting and preparing those matters I want to be submitted to the convening authority, and in that regard I must remain in contact with my defense counsel even after my case has been tried." Appellant also requested in the PTAR that the record of trial (ROT) be sent to him and his defense counsel, CPT SM. Finally, where the PTAR states,

"[p]ending action on my case, I can be contacted or a message may be left for me at the following address," appellant wrote "N/A." However, appellant's email address is typed on the form.[1]

On 22 July 2013, the convening authority's Office of the Staff Judge Advocate (OSJA) received the authenticated record of trial. On 29 July 2013, the staff judge advocate's recommendation (SJAR) was signed. The same day, the OSJA mailed the ROT and SJAR to appellant at the address on his approved request for excess leave; the ROT and SJAR arrived at this address on 8 August 2013 and the carrier left a notice of attempted delivery. Unclaimed by appellant, the ROT and SJAR were returned to the OSJA on 10 September 2013. Meanwhile, CPT SM transitioned from the active to reserve component. On 1 August 2013, the OSJA provided the SJAR and ROT to the Senior Defense Counsel, MAJ KS; the SJAR was also emailed to CPT SM.

On 19 August 2013, the Trial Defense Service (TDS) office informed the OSJA that CPT AP, a newly appointed defense counsel, would submit appellant's R.C.M. 1105 matters. Captain AP had received a copy of the ROT and SJAR two weeks earlier. On 20 August 2013, CPT AP informed the OSJA that he intended to submit a request for delay and asked whether appellant had been served with the ROT. The OSJA responded the next day as follows: "the time started when MAJ [KS] signed for the SJAR and Record in the absence of CPT [SM]. The accused did not leave a forwarding address of where he wanted us to send the record, so it was sent to the address listed on his leave paperwork." Captain AP submitted a request for delay the same day. On 27 August 2013, the OSJA informed CPT AP that his delay had been granted until 10 September 2013.

On 10 September 2013, the OSJA sent an email reminding CPT AP that the matters were due that day. Captain AP replied that "[t]he matters are ready to go," that he was "just waiting on confirmation on one last TDS administrative piece," and that he would make sure to send the matters. A few hours later, CPT AP again emailed the OSJA to inform them that "there's a hold placed on the clemency matters. As such, I will not be submitting the matters today, as expected." The OSJA replied:

> I am not aware of any "hold" placed on clemency, nor any
> provision that allows for such. That said, I am aware that

---

[1] The record establishes the additional facts necessary to this opinion. The enclosures include: a memorandum for record contemporaneously drafted by the Chief of Military Justice; email traffic between defense counsel and the OSJA's military justice section; and shipment tracking information.

> you may not have formed an attorney/client relationship
> with the Soldier. That said, once we have complied with
> our obligations under R.C.M. 1104, we will be moving the
> packet forward whether or not the Soldier submits matters
> as permitted by R.C.M. 1105.

Captain AP replied by asking for a digital copy of the authenticated record of trial to be emailed to him. The record reflects that because CPT AP never formed an attorney client relationship with appellant, he was not authorized to submit matters on appellant's behalf.

On 1 October 2013, CPT SM received the record of trial. On 9 October 2013, MAJ KS informed the OSJA that CPT SM was attempting to make contact with his client and that the TDS office planned to send a memorandum to appellant's last known address.

On 1 November 2013, the staff judge advocate (SJA) signed the first addendum, stating: "The accused did not submit a request for clemency." The OSJA mailed the first addendum, along with the SJAR and ROT, to appellant's leave address on 7 November 2013. The package arrived on 14 November 2013; it was marked unclaimed on 12 December 2013.

On 30 November 2013, CPT SM signed a "Certificate of Service" for the first addendum, wherein he wrote: "I do not understand why I was served with a copy [of the addendum] because, to my knowledge, [appellant] has not been served with the record of trial or post-trial recommendation. The defense's post-trial submission is not due, and, usually, the addendum is served after the date the defense's post-trial submission is due and submitted." On 20 December 2013, the SJA drafted a second addendum, disagreeing with CPT SM's opinion that appellant's post-trial matters were not due and noting that "[t]he record of trial was served on defense counsel and there have been two attempts to serve . . . the accused at his leave address. The packages were unclaimed by the accused." The SJA again stated that appellant had submitted no R.C.M. 1105 matters and, in his opinion, had waived his right to do so. The SJA recommended the convening authority approve the adjudged findings and sentence, which he did, taking initial action in appellant's case the same day.

In a memorandum for record drafted on 6 January 2014, the OSJA's Chief of Justice further explained:

> [Appellant's PTAR] included a provision allowing his
> defense counsel, CPT [SM] to submit R.C.M. 1105 matters
> on his behalf in the event he could not be located. This
> office exercised due diligence making every effort to
> personally serve the record of trial on the accused. When

4

those efforts failed, this office formally performed substitute service on defense counsel, and obtained proof of service. Personal service of the record of trial on the accused was impracticable, and substitute service was mandated by military exigency. The government considers the 10 day period of time to submit R.C.M. 1105 matters to have expired. The defense counsel's failure to submit matters on behalf of [appellant] is perceived as a waiver IAW R.C.M. 1105(d)(1).

## LAW AND ANALYSIS

We first outline the requirements set forth by the UCMJ and the Rules for Courts-Martial regarding giving or serving ROTs and SJARs upon accused and the time period prescribed for submission of post-trial matters by an accused.

Under Article 54(d), UCMJ, "[a] copy of the record of proceedings of each general and special court-martial *shall be given* to the accused as soon as it is authenticated." (Emphasis added). Under R.C.M. 1104(b)(1)(A), "the trial counsel shall cause a copy of the record of trial to be *served* on the accused as soon as the record of trial is authenticated." (Emphasis added). Rule for Courts-Martial 1104(b)(1)(B) in turn requires trial counsel to establish proof of service by either causing "the accused's *receipt* for the copy of the record of trial to be attached to the original record of trial" or if impracticable, by preparing a certificate indicating that a copy of the ROT has been transmitted to the accused. (Emphasis added). With regard to the SJAR, both Article 60(d), UCMJ, and R.C.M. 1106(f)(1) require that the SJAR "be *served* on the accused." (Emphasis added).

Article 60(b)(1), UCMJ, requires submission of post-trial matters "within 10 days after the accused has been given an authenticated record of trial and, if applicable, the recommendation of the staff judge advocate . . . ." Rule for Courts-Martial 1105(c)(1) provides that an accused may submit post-trial matters within the later of 10 days after a copy of the ROT, SJAR, or addendum containing new matter "is served on the accused."

While not quite legion, the challenges facing OSJAs and TDS offices in the post-trial process are numerous and occasionally involve recently convicted soldiers who do not acknowledge or answer mail. In this context, we must interpret whether

5

appellant was properly "given" or "served" the ROT and SJAR within the meaning of the code and the rules.[2]

Neither the statute nor the rules specify a particular method for serving the ROT and SJAR to an accused. Similarly, we do not prescribe a manner of service with this opinion, recognizing practitioners' needs to adapt to unpredictable circumstances. Mailing the ROT and SJAR to an accused's last known address satisfies this requirement. *See United States v. Kincheloe*, 14 M.J. 40, 43 (C.M.A. 1982) (citing Fed. R. Crim. P. 49(b); Fed. R. Civ. P. 5(b)) ("[S]ervice by mail . . . which is authorized for the service of papers in criminal and civil actions in the Federal courts, . . . is a permissible way to serve post-trial review."). This not only comports with practice in the civilian federal system, but also comports with the custom of serving ROTs and SJARs in the Army by certified mail with return-receipt requested. *See* Office of the Clerk of Court for the United States Army Court of Criminal Appeals, The Post-Trial Handbook: A Guide for Military Justice Practitioners, paras. 4-1(b), 4-2(d) (2012 ed.).

The question remains: when an accused is served the ROT and SJAR by certified mail, when is service *complete* thereby triggering the accused's ten-day deadline for submission of post-trial matters? One possible answer may be found in the Federal Rules of Criminal Procedure, which provide that "service is complete upon mailing." *See* Fed. R. Crim. P. 49(b); Fed. R. Civ. P. 5(b)(2)(C). However, we decline to adopt this approach in light of R.C.M. 1104(b)(1)(B)'s requirement, which makes proof of service contingent upon appellant's *receipt* of the ROT. We now hold that where the government elects to serve post-trial papers by certified mail, service of such papers is *complete* upon the day the papers *arrive* at an accused's last known-address. This interpretation is consistent with the President's requirement that the accused's receipt of the ROT (or if impracticable, certificate of transmission) be attached to the ROT itself. Establishing completion of service upon delivery to an accused's last known address also encourages OSJAs to track ROTs and SJARs and maintain accountability both of the documents themselves and the time elapsed since mailing.

In this case, while appellant did not include a mailing address on the PTAR, he provided his last known address in his excess leave request. We find that with the technique the government chose, it fulfilled its responsibility to serve the ROT

---

[2] We acknowledge that despite the difference in terms used by the statute and the rule regarding the requirement to "give[]" or to "serve[]" a record of trial on the accused, our superior court has recognized a formal service requirement of the authenticated record of trial. *Cf. United States v. Travis*, 66 M.J. 301, 303 (C.A.A.F. 2008).

and SJAR to appellant. As reflected in the record, the government accomplished this task by mailing these items to appellant's last known address. Service was complete upon the first attempted delivery of the package. Appellant's apparent lack of effort to claim the delivery is immaterial.[3]

Despite the fact that service was properly effected on appellant in accordance with this opinion, the government requests we return appellant's case to the convening authority for a new review and action. Under the particular circumstances of this case and in light of the government's concession that appellant has made a colorable showing of prejudice, we will grant the requested relief.

## CONCLUSION

The convening authority's action, dated 20 December 2013, is set aside. The record of trial will be returned to The Judge Advocate General for a new action by the same or a different convening authority in accordance with Article 60(c)-(e), UCMJ.

Senior Judge LIND and Judge KRAUSS concur.

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court

---

[3] We have considered R.C.M. 1104(b)(1)(C), which provides for substitute service of the ROT, and R.C.M. 1106(f)(1), which provides forwarding the accused's copy of the SJAR to defense counsel when it is impracticable to serve the acccused. Considering our conclusion that appellant was actually served the ROT and SJAR, this is not a "substitute service" case.