# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
HERRING, PENLAND, and WOLFE
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**Specialist ALVIN S. BANKS**
**United States Army, Appellant**

ARMY 20130948

Headquarters, 7th Infantry Division
Craig S. Denney, Military Judge (arraignment)
David L. Conn, Military Judge (trial)
Lieutenant Colonel Michael S. Devine, Staff Judge Advocate (pretrial)
Colonel Robert F. Resnick, Staff Judge Advocate (post-trial)

For Appellant: Colonel Mary J. Bradley, JA; Major Christopher D. Coleman, JA; Captain Ryan T. Yoder, JA (on brief); Lieutenant Colonel Jonathan F. Potter, JA; Captain Ryan T. Yoder, JA (on reply brief).

For Appellee: Colonel Mark H. Sydenham, JA; Major John K. Choike, JA; Captain John Gardella, JA (on brief).

16 August 2016

------------------------------------
OPINION OF THE COURT
------------------------------------

WOLFE, Judge:

An officer panel sitting as a general court-martial convicted appellant, contrary to his pleas, of one specification of violating a general order and one specification of abusive sexual contact, in violation of Articles 92 and 120, Uniform Code of Military Justice [hereinafter UCMJ], 10 U.S.C. §§ 892, 920 (2012). The court-martial sentenced appellant to be discharged from the Army with a bad-conduct discharge, to be confined for thirty days, to forfeit all pay and allowances, and to be reduced to the grade of E-1. The convening authority approved the sentence as adjudged.

This case is before us pursuant to Article 66(b), UCMJ. Appellant assigns one error that requires discussion and relief. We have considered the matters

personally submitted by appellant pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982) and determine they do not merit relief.

## BACKGROUND

Appellant's convictions stem from a single incident in July 2012 at Forward Operating Base Lagman, Afghanistan. On 29 July 2012, Sergeant (SGT) NK awoke to appellant in her living quarters and pulling down her pajama bottoms. After awaking, appellant said to SGT NK, "Let me taste it just one time." After a brief verbal altercation appellant left. For this conduct, appellant was convicted of abusive sexual contact for touching SGT NK's hip while trying to pull down her pajama bottoms, and for disobeying a general order that prohibited soldiers of the opposite sex from entering each other's living space without permission and under certain conditions.[1]

## DISCUSSION

On appeal, appellant's sole assignment of error concerns the dilatory post-trial processing of the case. Appellant alleges the government allowed 440 days to elapse between sentencing and action and requests relief under *United States v. Moreno*, 63 M.J. 129 (C.A.A.F. 2006). The government arrives at a different calculation and asserts the government is responsible for only 281 days of delay. The discrepancy between the two parties' calculations is caused by differing opinions on how to calculate the time taken by the defense counsel to submit matters to the convening authority under Rule for Courts-Martial [R.C.M.] 1105. As we repeatedly see cases in which these issues are disputed, we resolve them today.

### A. Calculation of time

The sentence in this case was adjudged on 6 November 2013. On 8 August 2014, appellant received his copy of the staff judge advocate recommendation (SJAR) and the authenticated record of trial. The government sent the defense counsel several emails requesting submission of the R.C.M. 1105 matters and requesting an update. On 1 October 2014, defense counsel responded that submission of the matters "may take another 2 weeks." Matters were submitted on 8 January 2015; 153 days after receipt of the SJAR and record of trial.[2]

---

[1] Appellant was acquitted of the offense of attempted sexual assault.

[2] Although not relevant in deciding this issue, we note that between sentencing and

(continued . . . )

Article 60(b)(1), UCMJ, provides that an accused's submissions to the convening authority "shall be made within 10 days after the accused has been given an authenticated record of trial and, if applicable, the recommendation of the staff judge advocate." If an accused shows that additional time is required to submit matters, for "good cause" the government may "may extend the applicable period . . . for *not more than* an additional 20 days." Article 60(b)(2)(emphasis added).

Accordingly there are three periods of time we must determine how to count for purposes of determining whether there is a presumptive violation of *Moreno*: the initial ten-day period; the optional twenty-day extension; and any period of time taken by the defense beyond the initial thirty days.

First, with regards to the initial ten days that an accused has to submit R.C.M. 1105 matters, we do not believe any deduction is appropriate. That is, it is irrelevant for *Moreno* purposes whether the accused makes his 1105 submissions in two days or ten days. The accused has, as a matter of right under Article 60, ten days. As the ten-day period applies in all cases, we do not think our superior court intended to exclude it for purposes of applying their decision in *Moreno. See e.g., United States v. Toro*, ARMY 20130441, 2015 CCA LEXIS 450, at *10 (Army Ct. Crim. App. 23 Oct. 2015); *United States v. Kindle*, 2015 CCA LEXIS 43, *14 (Army Ct. Crim. App. 10 Feb. 2015); *United States v. Davenport*, 2013 CCA LEXIS 361, *28 n. 13 (Army Ct. Crim. App. 18 Apr. 2013)(reversed on other grounds).

However, we come to the opposite conclusion when addressing the twenty-day extension. An extension may be granted only upon a showing by the accused that additional time is needed. Accordingly, when an accused requests an extension and the extension is granted, the period of the extension should not be included when calculating government compliance with *Moreno.*

---

( . . . continued)
receiving a copy of the record of trial the defense counsel left active duty. In the written acknowledgement of appellant's post-trial rights, the defense counsel stated he would continue to be responsible for appellant's post-trial matters. Additionally, during an Article 39(a) session held to discuss appellant's post-trial rights, defense counsel acknowledged he would shortly be going on terminal leave, but described his responsibility to appellant as "a lingering responsibility."

In a memorandum submitted on behalf of his client as part of the R.C.M. 1105 submission, counsel noted that his civilian employment requirements had delayed his submissions. (In that same memorandum, defense counsel raised unacceptable post-trial delay as an allegation of legal error). Appellant asserts on appeal that the government should be responsible for this time as it was the government's responsibility to sua sponte provide substitute counsel. This strikes us as an unwise invitation for government interference with an accused's right to representation.

As to the third period of time, Article 60 establishes a mandatory ("*shall*") filing deadline of ten days for an accused to submit R.C.M. 1105 matters. As discussed above, the government may extend that period for "*not more than*" twenty days. That is, not only is there no authority for the government to grant an extension beyond twenty days; the plain meaning of Article 60(b)(2) *prohibits it*. Accordingly, we cannot relieve the government of their obligation to comply with *Moreno* when there was no authority to extend the amount of time for the defense to submit matters under R.C.M. 1105.

Prior to our superior court's decision in *Moreno*, we said, "Defense counsel bear responsibility for timely submissions and we will not hold their undue delay against the government." *United States v. Garman*, 59 M.J. 677, 680-81 (Army Ct. Crim. App. 18 Dec. 2003). Notwithstanding the foregoing, the government must remain vigilant over the entire post-trial processing phase of the case. As numerous cases have demonstrated, the admonishment to the government to stay vigilant was insufficient, resulting in the CAAF's decision in *Moreno*.[3] To the extent that our pre-*Moreno* cases say we will not hold defense counsel's undue delay against the government, they are no longer reliable.

The corollary of this reasoning is that when an accused fails to file R.C.M. 1105 matters in a timely manner the government is not required to wait for an untimely submission. Article 60 specifically provides for the convening authority taking action "after the time for submitting such matters expires." Article 60(c)(2). This makes sense as the government cannot simultaneously be responsible for compliance with *Moreno* and yet be unable to advance the case until they receive a tardy counsel's submission. Defense counsel are necessarily independent from the chain of command. *See* Army Reg. 27-10, Legal Services: Military Justice [hereinafter AR 27-10] para. 6-3 a. (Chief of the Trial Defense Service exercises supervision and control over defense counsel).

---

[3] *United States v. Oestmann*, 61 M.J. 103 (C.A.A.F. 2005); *United States v. Jones*, 61 M.J. 80 (C.A.A.F. 2005); *Rodriguez-Rivera v. United States and The Judge Advocate General of the Navy*, 61 M.J. 19 (C.A.A.F. 2005); *United States v. Toohey*, 60 M.J. 100 (C.A.A.F. 2003); *Diaz v. The Judge Advocate General of the Navy*, 59 M.J. 34 (C.A.A.F. 2003); *United States v. Tardif*, 57 M.J. 219 (C.A.A.F. 2002).

The rules for courts-martial are even clearer. "Failure to submit matters within the time prescribed by this rule shall be deemed [forfeiture] of the right to submit matters." R.C.M. 1105(d)(1).[4]

We note that we have seldom rigorously applied forfeiture in the past. So, in *United States v. Borden*, 74 M.J. 754 (Army. Ct. Crim. App. 2015) we granted appellant's request for a new action notwithstanding that we found the convening authority had acted after appellant had missed the deadline for filing his R.C.M. 1105 matters.

Our prior cases also demonstrate a reluctance to consider whether defense counsel were ineffective for failing to submit timely R.C.M. 1105 matters. In *United States v. Palmer*, we ordered a new action and specifically declined to address the issue of whether counsel was ineffective for missing the R.C.M. 1105 submission deadline. *United States v. Palmer*, ARMY 20050769, 2007 CCA LEXIS 592, at *2-3 (Army Ct. Crim. App. 7 Aug. 2007).

However, we determine it is worth reconsidering how we address these issues for several reasons:

First, when counsel miss a mandatory filing deadline–and that is what is meant by "shall be made within 10 days"–we should address head-on the issue that this presents: Was counsel ineffective? *See Strickland v. Washington*, 466 U.S. 668 (1984). To the extent that the current practice has avoided this issue by routinely delaying convening authority action to accommodate tardy submissions, it rests on shaky reasoning. Though providing for an ultra vires extension of the time for the defense to submit matters may moot a claim of ineffective assistance of counsel (IAC) by extinguishing the prejudice prong in a *Strickland* analysis, such a practice elevates the interests of counsel (by avoiding an IAC claim) over the interests of

---

[4] R.C.M. 1105 (d)(1) uses the term "waiver." We use the word "forfeiture" instead of "waiver" here for two reasons. First, Article 60(b)(4) describes "waiver" of post-trial matters as a written submission (i.e. an express written waiver). It is confusing to use the term "waiver" to mean both the failure to act (as used in R.C.M. 1105(d)) and an intentional express written waiver (as used in Article 60(b)(4)). Second, the word "forfeiture" is consistent with the analytical construct set forth by our superior court, in *United States v. Gladue*, 67 M.J. 311, 313 (C.A.A.F. 2009) ("Whereas forfeiture is the failure to make the timely assertion of a right, waiver is the intentional relinquishment or abandonment of a known right. The distinction between the terms is important. If an appellant has forfeited a right by failing to raise it at trial, we review for plain error. When, on the other hand, an appellant intentionally waives a known right at trial, it is extinguished and may not be raised on appeal.") (internal citations and quotations omitted).

justice (with regards to both appellant and society). For example, in this case neither party argues that appellant's 1105 matters reflect a five-month effort or that appellant was well-served by the untimely submissions. In fact, appellant's counsel *admitted* in his R.C.M. 1105 submission that the 153-day delay did not benefit appellant and instead "were entirely for the accommodation of Defense Counsel." The government, in effect, argues that appellant should be held responsible for his counsel's dilatory effort. But it is the government, not appellant, who is responsible for post-trial processing and it is the convening authority, not appellant, that determines when action is taken on the case.

Second, recent amendments to Article 60 have dramatically altered the convening authority's ability to grant clemency. Almost all cases referred to this court are referred pursuant to Article 66(b)(1). That is, cases in which the approved sentence extends to death, a dismissal or punitive discharge, or a term of confinement of more than one year. With this class of cases, unless the case involves charges that predate the amendments to Article 60,[5] the convening authority is prohibited from modifying the findings or ordering a rehearing,[6] and may take action only on that part of the sentence that does not include a discharge or confinement of more than six months. When one considers the automatic reduction and forfeiture provisions of Articles 58a and 58b, the convening authority's ability to give meaningful relief as part of his action may be minimal in many cases.[7] Delay that may have been tolerable when it at least served to inform the convening authority's broad clemency powers becomes less tolerable when that authority is substantially diminished.

---

[5] If all of the offenses occurred on or after 24 June 2014, the new subsections (b)–(f) of R.C.M. 1107, which limit the convening authority's clemency power, apply, otherwise the prior version of R.C.M. 1107 applies to all offenses in the case. . . ." Executive Order 13696, 80 Fed. Reg. 35,810 (22 June 2015). In this case the offenses were committed on 29 July 2012.

[6] A convening authority may order a rehearing "if he disapproves the findings and sentence." Article 60(f)(3). It follows that if the convening authority cannot disapprove the findings or sentence he cannot order a rehearing.

[7] More broadly, the entire post-trial process was designed to collect and filter information so as to inform the convening authority's decision at initial action. For example, the staff judge advocate is required to respond to the assertion of legal error in R.C.M. 1105 matters in the addendum. R.C.M. 1106(d)(4). This requirement remains, even in cases where the convening authority lacks the ability to correct the error. The long-term effects of the changes to the convening authority's Article 60 responsibilities continue to be determined.

Third, our superior court has recognized "the need for prompt disposition of disciplinary matters" and "that the unique nature of review under Article 66(c), UCMJ, 'calls for, if anything, even greater diligence and timeliness than is found in the civilian system.'" *Moreno*, 63 M.J. at 142 (citing *Diaz v. The Judge Advocate General of the Navy*, 59 M.J. 34, 39 (C.A.A.F. 2003)). In *Moreno*, our superior court found that "[d]elays have been tolerated at all levels in the military justice system so much so that in many instances they are now considered the norm." *Id*. at 143. Such considerations call for greater adherence to mandatory deadlines, not less.

Finally, in a case where the time for the defense to submit R.C.M. 1105 matters has expired, the convening authority is free to take action on the court-martial.[8] That is, whether to take action on the court-martial is entirely a discretionary decision by the government. Article 66(c)(2) (The convening authority may take action only after receipt of matters *or* after the time to submit matters has expired).

Accordingly, we hold that in calculating compliance with *Moreno's* 120-day threshold, when considering submissions under R.C.M. 1105 the only time that may be excluded from the calculation is when the accused has requested (and been granted) a twenty day extension in accordance with Article 60(b). As after the authorized time has expired the convening authority is authorized to take action, any additional time taken by the defense will continue to accrue towards the *Moreno* 120-day presumption of unreasonableness.[9] This holding is also consistent with the prescribed calculation of "cumulative elapsed days" in preparing Dep't of the Army Form 5112. *See* Army Reg. 27-10, para. 5-41(b) (allowing deductions only for extensions of time granted pursuant to RCM 1105(c)(1), 1106(f)(5), 1110(f)(1) and

---

[8] Of course, if the defense submits untimely matters, but they are submitted before the convening authority takes action, the convening authority should still consider the matters. The intent here is not to encourage gamesmanship, but rather to hold both government and the defense to the time periods prescribed by Congress in Article 60 and our superior court's decision in *Moreno*. *See also United States. Travis*, 66 M.J. 301, 304 (C.A.A.F. 2008) ("An SJA need not rush into action . . . . We urge a commonsense approach to guarantee a convicted servicemember gets full and fair clemency consideration and that convening authorities have everything they need to prudently exercise their unique clemency function at action.").

[9] We reiterate our superior court's reasoning in *Moreno*: "These presumptions of unreasonable delay will be viewed as satisfying the first *Barker* [*v. Wingo*, 407 U.S. 514, 530 (1972)] factor and they will apply whether or not the appellant was sentenced to or serving confinement. It is important to note that the presumptions serve to trigger the four-part *Barker* analysis –not resolve it." *Moreno*, 63 M.J. at 142 (citing *Barker*).

where action is specifically deferred pending the accused's testimony in another case).  The regulation prohibits including deductions for any other reason.  *Id.*

Applying this holding to appellant's case we adopt appellant's calculations of 440 days having elapsed between sentencing and action.

*B. Analysis*

In *Moreno*, our superior court adopted the four part analysis set out forth in *Barker v. Wingo*, 407 U.S. 514, 530 (1972):  (1) the length of the delay; (2) the reasons for the delay; (3) the appellant's assertion of the right to timely review and appeal; and (4) prejudice. *United States v. Jones*, 61 M.J. 80, 83 (C.A.A.F. 2005).  Having calculated the length of delay as 440 days, we must now turn to the remaining factors.

*1.  Reasons for the delay*

The chief of justice addressed in a memorandum the second factor: the reasons for delay.  He explained that the 7th Infantry Division was activated in October 2012 and that court-martial volume, staff shortages, and scheduled leave and holidays contributed to the delay in processing appellant's case.  In *Moreno*, our superior court stated that it is the *government's* responsibility to "provide adequate staffing" of the appellate divisions.  *Moreno*, 63 M.J. at 137.  We believe the same logic applies to the staffing of military justice sections.  *United States v. Arriaga*, 70 M.J. 51, 57 (C.A.A.F. 2011) ("personnel and administrative issues . . . are not legitimate reasons justifying otherwise unreasonable post-trial delay.").[10]  Even if we were to assume that staff shortages would justify an extended delay, the record contains no evidence of the government's steps to acquire additional persons.  Certainly staff shortages cannot justify an excessive delay if no action was taken to remedy the problem.

The standing up of a new division is an operational requirement that may (at least initially) be considered in determining whether a delay was reasonable.  However, as time passes what may have been initially excusable transmutes into a routine staffing issue.  On balance, we find the chief of justice's explanation unpersuasive.  This case was not long or complex.  The convening authority's action, for example, was not delayed in order to have appellant testify in a related case or similar concerns.

---

[10] This court's holding in *United States v. Bauerbach* that "exceptionally heavy military justice post-trial workload" would excuse post-trial delay must yield to our superior court's determination of the issue.  55 M.J. 501, 507 (Army. Ct. Crim. App. 2001).

By contrast, the military judge's explanation that he was delayed in authenticating the record because he had recently received records totaling 9,000 pages was reasonable. Military judges are not fungible, and the detailing of additional military judges would not have reduced *this* judge's requirement to personally authenticate *this* record.

On balance we find no reasonable explanation for the delay in processing this case, which favors appellant.

### 2. *Appellant's assertion of the right to timely action*

As to the third consideration, appellant did not make a timely request for the speedy post-trial processing of his case. This factor obviously weighs in favor of the government.

### 3. *Prejudice*

The only prejudice cited by appellant is that the delay is so egregious that "under the totality of the circumstances it affects the public's perception of fairness and integrity of the military justice system." While we agree with appellant's characterization of the delay as "egregious" we disagree that appellant has suffered any prejudice. For example, as appellant was sentenced to only thirty days of confinement, he was not subject to "oppressive incarceration pending appeal." *Moreno* at 138 (citing *Rherark v. Shaw*, 628 F.2d 297, 303 n.8 (5th Cir. 1980)).

On balance, we do not find the delay in this case constituted a due process violation.

However, we must still consider whether the sentence is appropriate under our Article 66(c) duties. Here, we find ourselves at a familiar crossroads. The sentence as *adjudged* is not inappropriate given appellant's offenses. But, our duty is to review the sentence "*as approved*" which includes an assessment of the unreasonable post-trial delay. Thus, we are forced to choose between either reducing an earned sentence or appearing to turn a blind eye to excessive delay. We provide appellant relief in our decretal paragraph.

**CONCLUSION**

The findings of guilty are AFFIRMED. After considering the entire record, the court AFFIRMS only so much of the sentence as provides for a bad-conduct discharge. All rights, privileges, and property, of which appellant has been deprived by virtue of that portion of the sentence set aside by this decision are ordered restored. *See* UCMJ arts. 58b(c) and 75(a).

Judge HERRING and Judge PENLAND concur.

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court