# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
SALUSSOLIA, FLEMING, and EWING
Appellate Military Judges

**UNITED STATES, Appellee**
v.
**Private E2 JACOB G. GRIEGO**
**United States Army, Appellant**

ARMY 20160487

Headquarters, Fort Stewart
John S.T. Irgens, Military Judge
Colonel Luis O. Rodriguez, Staff Judge Advocate

For Appellant: Major Timothy G. Burroughs, JA; Zachary Spilman, Esquire (on brief and reply brief).

For Appellee: Colonel Steven P. Haight, JA; Lieutenant Colonel Wayne H. Williams, JA; Major Jeremy Watford, JA (on brief).

20 September 2019

---

MEMORANDUM OPINION ON FURTHER REVIEW

---

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

EWING, Judge:

In his second trip to this court, appellant contends that: (1) the charges against him were multiplicious or unreasonably multiplied; (2) his guilty plea was improvident; (3) he received ineffective assistance of counsel; and (4) his sentence was inappropriately severe. Finding no error, we affirm.[1]

---

[1] A military judge sitting as a general court-martial convicted appellant, pursuant to his pleas, of eight specifications of sexual assault of a child; eleven specifications of sexual abuse of a child; two specifications of willfully disobeying an order of his superior commissioned officer; one specification of production of child pornography; two specifications of sexual exploitation of a child under 18 U.S.C. § 2251; one specification of wrongful possession of child pornography; two

(continued . . .)

## BACKGROUND

Appellant pleaded guilty to numerous sexual offenses against children, as well as obstructing the government's investigation into some of those crimes, and violating lawful orders.[2] The majority of appellant's offenses involved his years-long sexual molestation of AB, who, at the time of the offenses at issue here, was living in California's foster care system.

AB was 12 years old when she met appellant, who was then 21, in 2012. Appellant knew AB's age because she told him. Within a month of their meeting, appellant penetrated AB's vulva with his fingers. While AB was still 12, appellant began having vaginal and anal intercourse with her regularly. Appellant's molestation of AB continued for years, including after appellant joined the Army in March 2014. While stationed at Fort Stewart, Georgia, appellant—by this time a 23

---

(. . . continued)
specifications of obstruction of justice; and one specification of enticing a child for indecent purposes in violation of Ga. Code § 16-6-5 assimilated by 18 U.S.C. § 13; in violation of Articles 120b(b), 120b(c), 90, and 134, UCMJ, respectively. The military judge sentenced appellant to a dishonorable discharge, confinement for 25 years, forfeiture of all pay and allowances, and reduction to the grade of E-1. The military judge granted appellant 132 days of confinement credit. The convening authority approved the adjudged sentence.

In a prior decision in this same case we set aside the enticing specification as improperly assimilated. *United States v. Griego*, ARMY 20160487, 2018 CCA LEXIS 418, *2 (Army Ct. Crim. App. 17 Aug. 2018). We further noted that appellant's first trial defense counsel submitted no matters to the convening authority pursuant to R.C.M. 1105 and 1106, and therefore remanded for a new convening authority's action. As a result of our setting aside the enticing specification, in our remand order, we ordered that the convening authority could affirm no sentence "in excess of twenty-four years and nine months." *Id*. at *3. In a second convening authority's action following remand, the convening authority disapproved three months of the adjudged sentence, granted appellant an additional seven days of confinement credit -- because appellant had received nonjudicial punishment for violating the same military protective order at issue in his court-martial -- for a total of 139 days of confinement credit, and otherwise approved the findings and sentence.

[2] As explained herein, the military judge merged two of the original 29 specifications to which appellant pleaded guilty for both findings and sentencing purposes, and we set aside one specification in appellant's prior appeal for being improperly assimilated.

year-old Soldier with a GT score of 119—would take leave, fly across the country, and book hotel rooms in California or otherwise arrange to meet and molest AB, who was by then 14. During these trips, which spanned from June of 2014 until May of 2015, appellant penetrated AB's vulva, anus, and mouth with his penis, digitally penetrated her vulva and anus, penetrated her vulva with his tongue, and photographed some of the abuse. AB had to change foster homes or go to a temporary shelter three times after running away to meet appellant. Finally, in May of 2015, after AB ran away yet again, one of AB's foster parents examined AB's iPad and discovered correspondence between AB and appellant, including a nude photo of AB that she had sent appellant. The foster parent turned the iPad over to the police, leading to the instant case.

Army investigators seized and searched appellant's electronic devices in June of 2015. In addition to multiple videos and images of child pornography depicting AB herself, the search of appellant's electronic devices revealed that he had been carrying on sexually explicit on-line relationships with two other young girls, "KK," and "Lily." Appellant knew both KK and Lily were under the age of 16. In addition to sending numerous sexually explicit messages to both girls, appellant attempted to entice KK to meet him for sex in Georgia. Appellant's laptop contained a photograph of KK, then 13, and a second unknown girl of approximately age 12, posing fully nude in front of a mirror.[3] Investigators found approximately 15,000

---

[3] As previously noted, the military judge merged for both findings and sentencing the original specification alleging appellant possessed these two digital images of child pornography with another specification alleging that he possessed five more digital images of child pornography. This resulted in Specification 3 of Charge III being amended to allege appellant possessed seven digital images of child pornography, rather than five, as originally charged.

Upon our review of appellant's providence inquiry and the images themselves, we are not satisfied that one of the two images in question meets the definition of child pornography. While both images depict underage females photographing the reflection of their nude bodies in a mirror, the image of the unknown underage female does not meet the definition of "lascivious exhibition" under the *Dost* factors, as adopted by our superior court in *United States v. Roderick*, 62 M.J. 425, 429 (C.A.A.F. 2006). *See United States v. Dost*, 636 F. Supp. 828, 832 (S.D. Cal 1986). Therefore, we affirm only so much of the finding of Specification 3 of Charge III as merged by the military judge, as finds that appellant did, at or near Fort Stewart, GA, on or about 9 June 2015, knowingly and wrongfully possess child pornography, to wit: *six* digital images and four digital videos of a minor engaging in sexually explicit conduct, such conduct being of a nature to bring discredit upon

(continued . . .)

messages—many of which were sexually explicit—between appellant and Lily. Appellant also possessed child pornography of Lily, which the girl had sent to him at his request.

Upon learning that he was under investigation, appellant told AB to delete their correspondence from her phone, and to help him by either refusing to talk to, or misleading, law enforcement. Appellant later violated his command's orders to have no contact with AB and to not possess electronic devices.

Our prior decision in this case did not bar appellant from raising his additional assignments of error "anew," following a second convening authority's action. *Griego*, 2018 CCA LEXIS 418, at *3. He has done so here. Because appellant expressly waived one of his claims and the others lack merit, we affirm.

## LAW AND DISCUSSION

### A. Multiplicity and Unreasonable Multiplication of Charges

Appellant now contends that some of his convictions represent an unreasonable multiplication of charges ("UMC") or that certain specifications were "facially duplicative," or "multiplicious" with other specifications. We do not reach the merits of this claim, because appellant waived it as part of his guilty plea.

Waiver and forfeiture are separate concepts. Where forfeiture is "'the failure to make the timely assertion of a right,'" waiver is the "'intentional relinquishment or abandonment of a known right.'" *United States v. Banks*, 75 M.J. 746, 749, n.4 (Army Ct. Crim. App. 2016) (quoting *United States v. Gladue*, 67 M.J. 311, 313 (C.A.A.F. 2009)). While forfeited claims may be reviewed for plain error, affirmative waiver of a legal claim means that "there is *no error at all* and an appellate court is without authority to reverse a conviction on that basis." *United States v. Chin*, 75 M.J. 220, 222 (C.A.A.F. 2016) (quoting *United States v. Weathers*, 186 F.3d 948, 955 (D.C. Cir. 1999)) (emphasis added). As relevant here, one way that an accused may affirmatively waive claims of multiplicity and/ or UMC is by agreeing to waive "all waivable motions" pursuant to a guilty plea. *See, e.g., Gladue*, 67 M.J. at 314 (so holding).

Appellant doubly waived relief for claims of multiplicity and UMC. First, appellant pleaded guilty which, standing alone, waived any claim of multiplicity or

---

(. . . continued)
the armed forces. As appellant concedes in his brief to this court, affirming the guilty finding of this specification with one less digital image of child pornography than the number originally charged does not entitle him to any relief.

UMC. *See United States v. Hardy*, 77 M.J. 438, 440-42 (C.A.A.F. 2018). Second, appellant waived "all non-jurisdictional motions" pursuant to his pretrial agreement, which, for our purposes, is the functional equivalent of the express waiver found by our superior court in *Gladue. See, also, e.g., Hardy*, 77 M.J. 438, 442 (C.A.A.F. 2018) ("an unreasonable multiplication of charges is not a jurisdictional defect"). Such an express waiver will foreclose even claims rooted in the most fundamental constitutional protections, including double jeopardy, the basis of a multiplicity objection. *Gladue*, 67 M.J. at 314 (citing *Ricketts v. Adamson*, 483 U.S. 1, 10 (1987)(double jeopardy defense waivable by pretrial agreement).

As in *Gladue*, appellant now asserts multiplicity and UMC claims on appeal. The only possible distinction appellant can draw with *Gladue* is that, notwithstanding appellant's motions waiver, he in fact raised one multiplicity issue at trial, and the military judge provided him relief. Specifically, appellant requested that two specifications of possession of child pornography be merged for both findings and sentencing. The government did not object, and the military judge granted appellant's motion and merged the two specifications into a single specification. Appellant contends that the fact that he asked for, and received, this relief regarding two of the 28 specifications to which he pleaded guilty vitiated his waiver as to *any other* multiplicity and UMC claims, including the ones he now raises.

Appellant's claim fails as a matter of logic. At appellant's court-martial, the government could have responded to appellant's requested relief by invoking appellant's waiver of all non-jurisdictional motions. But it does not follow that because the government "waived the waiver," as to the two specifications for which the military judge provided appellant relief, appellant is therefore free to raise *additional* multiplicity or UMC motions on appeal. Indeed, appellant offers no authority for this proposition, and other courts have enforced similar waivers even where the government has acquiesced to *some* relief. *See, e.g., United States v. Ortega-Hernandez*, 804 F.3d 447, 450-52 (D.C. Cir. 2015) (in plea agreement context, enforcing waiver as to one claim of error even though the government waived any waiver on a second claim of error). Thus, because appellant cannot meaningfully distinguish *Gladue*, that case mandates a finding of waiver here.[4]

---

[4] Of course, we could decide to notice waived error using our Article 66 "should be approved" power. *See, e.g., Chin*, 75 M.J. at 223 (C.A.A.F. 2016) ("the CCA is commanded by statute to review the entire record and approve only that which "should be approved." A fortiori, the CCAs are required to assess the entire record to determine whether to leave an accused's waiver intact, or to correct the error."). We decline to do so here. Appellant's offenses spanned years, included multiple child victims, and involved many separate and distinct modes of offenses. *See, e.g.,*

(continued . . .)

*B. Providence of Appellant's Pleas*

Appellant contends that his guilty pleas to five Article 134 specifications were improvident because the military judge failed to adequately cover the terminal "service discrediting" element with appellant. The specifications at issue charged appellant with two specifications of production of child pornography, one specification of possession of child pornography, and two specifications of obstruction of justice.

"We review a military judge's decision to accept a guilty plea for an abuse of discretion." *United States v. Miller*, 78 M.J. 835, 846 (Army Ct. Crim. App. 2019) (citing *United States v. Eberle*, 44 M.J. 374, 375 (C.A.A.F. 1996)). The test for whether a military judge has abused his or her discretion is "'whether the record shows a substantial basis in law or fact for questioning the plea.'" *Id.* (quoting *United States v. Moon*, 73 M.J. 382, 386 (C.A.A.F. 2014)). Because we find no "substantial basis in law and fact" to question appellant's guilty plea here, we reject appellant's claim.

In some respects, the military judge's providence inquiry regarding "service discrediting" could have been more thorough. For example, as to appellant's possession of child pornography involving AB, the military judge asked appellant whether he believed his conduct was service discrediting. When appellant responded, "Yes, Your Honor," the military judge said simply "[b]ecause you are a Soldier, right?" Appellant responded, "Yes, your Honor."

However, in other respects, and when viewing the record as a whole, it is clear both that the military judge described "service discrediting" to appellant, and that appellant agreed that his conduct met that definition. First, as the government correctly points out, the stipulation of fact introduced at appellant's guilty plea, which appellant signed, reviewed in court, and again agreed was true and accurate. He then explained in detail how all five specifications at issue here were service discrediting. Second, the military judge defined "service discrediting" multiple times in discussing these specifications, and appellant agreed that the "elements and definitions correctly described" his actions. Third, appellant evidenced his personal understanding of the term "service discrediting" by explaining, as to the two obstruction specifications, as follows:

---

(. . . continued)
*United States v. Conley*, 78 M.J. 747, 750-51 (Army. Ct. Crim. App. 2019) (rejecting use of "should be approved" power to address claim of UMC, noting that case did not "call out for relief").

> To me I see it as discrediting to the service because Soldiers should be doing the right thing, showing integrity, and cooperating with authority and chain of command. And in this case I was trying to deceive the people who were above me, Your Honor.
>
> . . . .
>
> I think [AB's foster parents] would think poorly of the Army because of me representing it, Your Honor.

Thus, in light of the military judge's multiple explanations of "service discrediting," appellant's correct explanation of the term on the record, and his detailed explanations in the stipulation of fact, we find that appellant's pleas were provident.

## C. Ineffective Assistance of Counsel

Appellant claims that his trial defense counsel rendered ineffective assistance by failing to alert the military judge to the fact that appellant's chain of command had placed certain restrictions on his liberty prior to trial which were not reflected on the charge sheet. These restrictions included, *inter alia*, a ban on appellant's possession of any electronic communication devices such as phones or computers, and an hourly sign-in requirement after the duty day ended and on non-duty days. Because appellant cannot demonstrate prejudice, his claim fails.

We review ineffective assistance claims claims *de novo. United States v. Akbar*, 74 M.J. 364, 379 (C.A.A.F. 2015); *United States v. Datavs*, 71 M.J. 420, 424 (C.A.A.F. 2012). "In order to prevail on a claim of ineffective assistance of counsel, an appellant must demonstrate both (1) that his counsel's performance was deficient, and (2) that this deficiency resulted in prejudice." *United States v. Green*, 68 M.J. 360, 361-62 (C.A.A.F. 2010) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)).

Because appellant must show both deficient performance and prejudice to make out a successful *Strickland* claim, we may start with either requirement. Indeed, "'[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice ... that course should be followed." *Datavs*, 71 M.J. at 424-25 (quoting *Strickland*, 466 U.S. at 697). To establish prejudice, an appellant must demonstrate "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. That requires a "substantial," not just "conceivable," likelihood of a different result. *Harrington v. Richter*, 562 U.S. 86, 112 (2011).

Setting aside the issue of deficient performance, appellant's claim fails because he cannot show prejudice. Appellant himself concedes that the conditions that his command placed on his liberty did not rise to the level of "restriction tantamount to confinement,"[5] as described in *United States v. Mason,* 19 M.J. 274 (C.M.A. 1985). In the context of this case, which involved appellant's guilty pleas to numerous serious sexual offenses involving three different children, it is speculative at best to say that the military judge's 25-year sentence would have been lower had appellant's trial defense counsel informed the judge of the non-*Mason* pretrial restrictions on appellant's liberty. Because a showing of *Strickland* prejudice requires more than speculation, appellant's claim fails. *See, e.g., Harrington,* 562 U.S. at 112; *Akbar,* 74 M.J. at 372 (no *Strickland* prejudice where "additional mitigation evidence [was] not sufficiently compelling to establish a *substantial* likelihood" of a different sentence) (emphasis added); *see also Datavs,* 71 M.J. at 424 ("It is not enough to show that the errors had some conceivable effect on the outcome") (internal quotation marks and citation omitted).

### D. *Sentence Appropriateness*

After entering into a pretrial agreement with the convening authority to plead guilty in exchange for a cap on confinement of 25 years, appellant now complains that the military judge's sentence, which hit the 25-year quantum on the head, was inappropriately severe. Appellant's claim lacks merit.

We review sentence appropriateness *de novo. United States v. Bauerbach,* 55 M.J. 501, 504 (Army Ct. Crim. App. 2001) (citing *United States v. Cole,* 31 M.J. 270, 272 (C.M.A. 1990)). This court 'may affirm only ... the sentence or such part of the sentence, as it finds correct in law and in fact and determines, on the basis of the entire record, should be approved.'" *United States v. Kelly,* 77 M.J. 404, 406 (C.A.A.F. 2018)(quoting Art. 66, UCMJ). In conducting this review, we consider many factors, including: "sentence severity; the entire record of trial; appellant's character and military service; and the nature, seriousness, facts, and circumstances of the criminal course of conduct." *United States v. Martinez,* 76 M.J. 837, 841-42 (Army Ct. Crim. App. 2017).

Our consideration of the *Martinez* factors leads us to conclude that appellant's sentence was appropriate. Appellant's crimes were far from isolated incidents. Rather, appellant committed serious sex offenses involving three different children over a lengthy period. The offenses to which appellant pleaded guilty subjected him to a possible period of confinement of 475 years. The longevity and nature of appellant's sexual molestation of AB was particularly aggravating, as AB explained

---

[5] Additionally, appellant affirmatively waived any claim of illegal pretrial punishment pursuant to Article 13, UCMJ, during his providence inquiry.

the lasting impact appellant's actions had on her in powerful sentencing testimony. Thus, on this record, appellant's ultimate sentence of 24 years, 9 months of confinement is appropriate.

## CONCLUSION

Upon consideration of the entire record, the findings of guilty and sentence are AFFIRMED.

Judges SALUSSOLIA and FLEMING concur.

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court